[No. C008191.Third Dist. May 29, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHNNIE BROWN, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication except for parts 2 and 3 of the Discussion.

COUNSEL

D. Kapp Nees for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, J. Robert Jibson and Mary Jane Hamilton, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

DAVIS, J.—A jury convicted defendant of assault with a deadly weapon and found he personally used a firearm, but did not personally inflict great bodily injury on the victim. (Pen. Code, §§ 245, subd. (a)(2), 12022.5, subds. (a), (d), 12022.7; all further section references are to the Penal Code, unless otherwise specified.) There was evidence showing the victim entered defendant's front porch and advanced toward defendant with a hammer raised back at shoulder-height after the two had argued about a contract under which the victim was to perform landscaping work at defendant's house. At this point, defendant, standing in the doorway of his home, shot the victim in the leg. According to defendant he did so in fear for his life.

In the published portion of this opinion, we hold that defendant was not entitled to a requested instruction based on section 198.5, the "Home Protection Bill of Rights."[1] Although there was evidence that the victim's entry onto defendant's front porch was unlawful and forcible, an entry onto a front porch like defendant's does not constitute entry into a residence as required under section 198.5. The porch in this case is an unenclosed front porch, without any signs, gates or other indications that would tend to show the residential occupant did not expect intrusion into that area. The porch is connected to a walkway, which is connected to a driveway, which in turn is connected to a public sidewalk. There is a doorbell adjacent to the front door to signal the arrival of persons on the porch. (A photograph of the porch is attached as an appendix.) Using principles developed by this court in *People*

[1]Section 198.5 provides: "Any person using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury to self, family, or a member of the household when that force is used against another person, not a member of the family or household, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence and the person using the force knew or had reason to believe that an unlawful and forcible entry occurred. [¶] As used in this section, great bodily injury means a significant or substantial physical injury."

v. *Nible* (1988) 200 Cal.App.3d 838 [246 Cal.Rptr. 119], we conclude that, under these circumstances, a residential occupant does not have a reasonable expectation of protection from unauthorized intrusion onto the porch and thus an entry there does not entitle a defendant occupant to an instruction based on section 198.5. In this situation, the occupant is left with the standard instructions on self-defense.

In the unpublished portion of this opinion, we conclude the trial court erred in determining that section 1203.095 required imprisonment as a condition of probation. We remand so the trial court can exercise its discretion under the "unusual case" provision of section 1203.095, subdivision (b). Finally, we conclude the trial court did not err in sustaining the prosecution's evidentiary objection to defense counsel's attempt to elicit testimony based on the victim's hospital records.

## BACKGROUND

What began as a minor contract dispute between a homeowner and a bricklayer ended with the homeowner shooting the bricklayer in the leg. About a month before the incident in question, defendant, the homeowner, and Jason Neal, the bricklayer, entered into a contract. Neal was to lay a brick flower bed at defendant's home, and defendant was to pay for labor and certain materials. The contract was to be completed over a two-week period in April because defendant had guests arriving at the end of that time. Prior to April 14, defendant and Neal had some minor disagreement regarding Neal's performance, but Neal was to finish the job.

On April 14, Neal arrived at defendant's house around 11:30 a.m. to continue his work. This time he brought an acquaintance, Butler, to help him. Neal, Butler and defendant gave varying accounts of what happened next.

### Neal's Testimony

As soon as Neal arrived at defendant's house on April 14, defendant came out of the garage and told Neal he thought Neal was going to be there earlier that morning. Defendant told Neal he should get his tools and leave without finishing the job. Defendant then said Neal could go ahead and finish, because he (defendant) had company arriving the next day. Defendant then changed his mind again and told Neal to get his tools from the porch; defendant also said he was keeping the tools Neal had stored in defendant's backyard because he had paid for them.

At this point, Neal acknowledges that defendant and he had a "disagreement." However, Neal maintained it never escalated to anything more than a

"man-to-man discussion." After that, defendant shut the garage door and went into his house. Neal then took his tools from the porch, put them beside his car, and walked back toward the house with a hammer in his hand. When he reached the flower bed, he began knocking off the top layer of bricks because he was angry at being fired. Neal testified he was turned oblong with his back towards the front door of defendant's house, approximately seven feet from the door.

After defendant walked into the house, Neal did not see defendant again until after he heard the gun go off. He did not hear defendant say anything other than his name before he heard the gunshot. Neal denied threatening or attacking defendant.

*Butler's Testimony*

When Butler and Neal arrived at defendant's house on April 14, defendant told Neal to pack up his tools and go home, "he was through." Neal and defendant then had a "heated discussion." Neal got some tools from the porch and set them by his car, then walked back toward the porch with empty hands. After defendant went into the garage, Neal picked up the rest of his tools and starting hitting the bricks he had laid, saying, "he [defendant] wasn't going to pay him for it, so he [Neal] was going to take it out."

Neal was facing the front door while he was hitting the bricks. Defendant came to the screen door and told Neal "you better," then shot Neal in the leg. Neal never attempted to throw the hammer, attack defendant, or strike anything but the bricks in the flower bed. Neal never tried to enter the house. Butler testified he could not remember how high Neal swung the hammer, but Neal was intent on hammering the bricks.

*Defendant's Testimony*

On April 14, defendant reminded Neal their agreement was that the work would be finished within two weeks, which meant Neal had only until the next day to complete the job. Yet, Neal had just delivered the balance of the bricks the previous day. Defendant did not think Neal could finish in that short time, so he told Neal to get his tools and go, that he would find someone else to finish the job.

At this point Neal picked up a "brick carry," walked over to defendant and started waving it around. Defendant backed further into the garage and warned Neal he was going to close the garage door. When Neal left the garage and passed a stack of bricks, he angrily kicked the pile down. Once

inside the house, defendant heard a "hammering noise." Defendant hurried to the front door and saw Neal hammering away at the flower bed; defendant then started out the screen door and said something like, "Cut it out! Stop! Stop! Stop!"

Once defendant opened the screen door and started out, Neal looked up and saw defendant. He raised up and swung back with the hammer, then came off the flower bed with the hammer in his right hand, raised to his shoulder. He whirled around and began moving towards defendant, "not fast, but deliberate." Defendant testified Neal was like a "raging" animal and was in a "very antagonistic mood."

When defendant realized that only the screen door stood between himself and Neal, he jumped back inside and tried closing the screen door. He was very afraid, and concerned only with how to stop Neal and protect himself. Because of some problem with the hydraulic on the screen door, defendant believed he had to hold onto it or else it would fly open. Defendant testified he could not reach around the wooden door, which was open and to his left, in time to shut it, without letting go of the screen door. So, while holding onto the screen door handle, defendant picked up a handgun, which was lying under a cloth on a room divider next to the door. By this time, Neal had stepped over the flower bed and had come up to the first level of the porch, approximately five feet from defendant. Defendant fired the gun through the screen door, hitting Neal in the leg.

Defendant was afraid and "knew [Neal] was going to attack [him] with that hammer . . . ." Defendant testified he intended to shoot down at the ground and sidewalk. He wasn't trying to hit Neal, but rather to stop him. Neal's right leg was on the porch when defendant shot him.

## DISCUSSION

### 1. *Defendant's Requested Jury Instruction on Section 198.5*

■ Section 198.5, enacted in 1984 and entitled the "Home Protection Bill of Rights," creates a rebuttable presumption that a residential occupant has a reasonable fear of death or great bodily injury when he or she uses deadly force against an unlawful and forcible intruder into the residence. (See fn. 1, *ante*; see also *People v. Owen* (1991) 226 Cal.App.3d 996, 1003, 1005 [277 Cal.Rptr. 341].) For section 198.5 to apply, four elements must be met. There must be an unlawful and forcible entry into a residence; the entry must be by someone who is not a member of the family or the household; the residential occupant must have used "deadly" force (as defined in § 198.5)

against the victim within the residence; and finally, the residential occupant must have had knowledge of the unlawful and forcible entry.

These four elements would comprise the heart of any instruction based on section 198.5. (See *Owen, supra,* 226 Cal.App.3d at p. 1007.) The trial court refused defendant's request to instruct under section 198.5 because the court found no evidence of "entry" into the "residence."

It is undisputed there was evidence showing that Neal's entry onto the porch was unlawful and forcible; that Neal was not a member of defendant's family or household; that defendant's firing of the gun constituted use of deadly force under section 198.5; and that defendant knew of Neal's unlawful and forcible entry, since he testified he ordered Neal off the property and then saw Neal approach menacingly with a hammer and told him to stop. The issue narrows to whether Neal's entry onto defendant's front porch constituted an entry into defendant's residence. In other words, is an entry onto an unenclosed front porch (a porch that has no access barriers from a public sidewalk) an entry into a residence, so that a residential occupant who uses deadly force against an unlawful and forcible intruder becomes entitled, upon request, to a jury instruction based on section 198.5? We conclude there was no residential entry here.

This issue requires us to examine the scope of the term "residence" in section 198.5 as it relates to a front porch. The plain language of section 198.5 shows the statute was intended to give residential occupants additional protection in situations where they are confronted in their own homes by unlawful intruders such as burglars.[2] It is appropriate, therefore, to look at relevant burglary cases to determine whether there was an entry into a residence in this case.

Preliminarily, we note that California's statutory definition of burglary is broader than the common law definition. Under California law, a breaking is no longer required. (*People* v. *Gauze* (1975) 15 Cal.3d 709, 712-713 [125 Cal.Rptr. 773, 542 P.2d 1365]; *People* v. *Nible, supra,* 200 Cal.App.3d at p. 843; *People* v. *Mackabee* (1989) 214 Cal.App.3d 1250, 1258 [263 Cal.Rptr. 183].) Furthermore, California case law has expanded the definition of a burglarious entry into a building or residence, to encompass situations where burglary would be inapplicable under the common law.

The California Courts of Appeal have formed various tests for determining the scope of the terms "residence" or "building" for burglarious entry. (Cf.

[2]See footnote 1, *ante.* See also People v. *Owen, supra,* 226 Cal.App.3d at page 105 wherein the court concluded the legislative history confirmed this intention.

*People* v. *Ravenscroft* (1988) 198 Cal.App.3d 639 [243 Cal.Rptr. 827], [surreptitiously inserting automatic teller machine (ATM) card into ATM mounted inside bank and secured flush with the exterior wall violated the airspace of the bank and constituted entry for burglary statute]; *People* v. *Osegueda* (1984) 163 Cal.App.3d Supp. 25 [210 Cal.Rptr. 182] [hole in wall between restaurant and an adjoining electronics store sufficient evidence for implied finding that airspace of store was penetrated]; *People* v. *Coutu* (1985) 171 Cal.App.3d 192 [217 Cal.Rptr. 191] [storeroom connected to dwelling by a breezeway was functionally interconnected with an integral part of the dwelling]; *People* v. *Zelaya* (1987) 194 Cal.App.3d 73 [239 Cal.Rptr. 289] [apartment building's garage, hallway, and tenant storage rooms were functionally connected with and an integral part of the building's living quarters]; *People* v. *Moreno* (1984) 158 Cal.App.3d 109 [204 Cal.Rptr. 17] [garage attached to a dwelling, without door connecting garage to interior of house was functionally interconnected with and immediately contiguous to other portions of the house].)

■ We conclude the reasonable expectation test this court formulated in *Nible* is the appropriate one to employ here. Since one of the purposes of the burglary statute is to protect against unauthorized entry and the attendant danger that the occupant will react violently to the intrusion, the reasonable expectation test focuses on the protection the inhabitants of a structure reasonably expect. (200 Cal.App.3d at p. 844; *People* v. *Wilson* (1989) 208 Cal.App.3d 611, 615 [256 Cal.Rptr. 422].) In situations implicating this particular purpose, the proper question is whether *the nature of a structure's composition* is such that a reasonable person would expect some protection from unauthorized intrusions. In *Nible,* this court held that a reasonable person would believe a window screen provides some protection against unauthorized intrusions, noting that even an open door or window affords some expectation of such protection because reasonable persons understand the social convention that portals may not be crossed without permission from the structure's owner. (200 Cal.App.3d at pp. 844-845.)

This safety-based reasonable expectation test is appropriate for the issue presented here involving section 198.5. This is because section 198.5 gives a defendant a rebuttable presumption that he was in reasonable fear of imminent danger when he used deadly force within his residence against an intruder (most likely a burglar) who unlawfully and forcibly entered the residence. As noted in *Owen,* section 198.5 establishes a presumption " 'that

the very act of forcible entry entails a threat to the life and limb of the homeowner.'" (*Owen, supra,* 226 Cal.App.3d at p. 1005.)[3]

■ Applying this reasonable expectation test to the ordinary, unenclosed front porch at issue here, we conclude that Neal's entry onto the porch cannot constitute entry into defendant's residence for purposes of section 198.5.[4] A reasonable person would not expect protection from unauthorized intrusion onto this kind of porch. Quite the contrary. Social convention dictates that anyone wishing to summon the occupant's presence or gain entry into the home must first enter the porch. The porch is not a portal. Absent "no soliciting" signs or a gate or some other barrier, Girl Scouts

[3]In *People* v. *Salemme* (1992) 2 Cal.App.4th 775 [3 Cal.Rptr.2d 398], this court recently held that a person who entered a home for the purpose of selling fraudulent securities could be convicted of burglary. In *Salemme,* the victim invited defendent into his home unaware that defendant intended to sell him the fraudulent securities. Relying on the plain language of section 459, as well as *Gauze, supra,* 15 Cal.3d 709, *People* v. *Pendleton* (1979) 25 Cal.3d 371 [158 Cal.Rptr. 343, 599 P.2d 649] and *People* v. *Superior Court* (*Granillo*) (1988) 205 Cal.App.3d 1478 [253 Cal.Rptr. 316], we concluded "that a person who enters a structure enumerated in Penal Code section 459 with the intent to commit *any* felony is guilty of burglary except when he or she (1) has an unconditional possessory right to enter as the occupant of that structure or (2) is invited in by the occupant who knows of and endorses the entrant's felonious intent. Since neither condition was satisifed . . . , defendant's alleged entry constituted burglary even though the act may have posed no physical danger to the victim who had invited defendant in to purchase securities from him." (*Salemme, supra,* 2 Cal.App.4th at pp. 777-778, italics in original.)

In arriving at this conclusion, this court rejected defendant's contention that he could not be convicted of burglary because the purpose of California's burglary statutes is to protect against dangers inherent in intrusion and there could be no danger from the mere entry of the victim's residence, for the purpose of selling fraudulent securities. In this vein, we noted that "[i]t is true that dicta in *Gauze* and *Granillo* indicate one of the purposes of California's burglary laws is to protect against the dangers to personal safety created by the 'usual burglary situation.' (*Gauze, supra,* 15 Cal.3d at p. 715; *Granillo, supra,* 205 Cal.App.3d at p. 1485.) However, . . . the primary purpose is to protect a possessory right in property. Thus, if there is an invasion of the occupant's possessory rights, the entry constitutes burglary regardless of whether actual or potential danger exists." (*Salemme, supra,* 2 Cal.App.4th at p. 781.)

As we have noted, the situation in the instant case is safety-based since it is predicated on section 198.5, which creates a rebuttable presumption that a residential occupant has a reasonable fear of death or great bodily injury when he or she uses deadly force against an unlawful and forcible intrusion into the residence. *Salemme* did not mention this court's decision in *Nible.* In contrast to *Salemme,* our focus here is whether there was evidence of an entry into a residence for purposes of section 198.5. In this context, the safety-based reasonable expectation test enunciated in *Nible* is appropriate.

[4]We have examined the pictures of defendant's porch, which were entered into evidence. A public sidewalk runs in front of the house. A walkway leading up to the steps of the porch is connected to a driveway which is connected to the public sidewalk. The porch is covered by the roof of the house and enclosed on three sides by the walls of the house. There were no signs, gates, or any other barriers which would prevent anyone from entering the porch. There was a doorbell adjacent to the front door. (See appendix.)

selling cookies, the person delivering the newspaper, the door-to-door salesperson or any stranger will likely come onto a front porch of this nature, without permission. The reasonable residential occupant would not react violently to this entry. We find that a residential occupant does not have a reasonable expectation of protection from unauthorized intrusion onto a front porch like the one involved in this case.

Defendant argues that a reasonable person would have an expectation of protection because of the threat of immediate access to the home. It is true that once on the porch, particularly if the front door is open (as it was in this case), an intruder would have ready access to the home. It is nonetheless a qualitatively lesser expectation of protection than that recognized in section 198.5, and a situation which is adequately covered by the self-defense doctrine. If a residential occupant reasonably believes that bodily injury is about to be inflicted upon him or her by the intruder's presence on the porch, then the occupant can use reasonable force to repel the intruder, and the occupant, if tried, would be entitled to self-defense instructions.[5] (See *People v. Gleghorn* (1987) 193 Cal.App.3d 196, 202-204 [238 Cal.Rptr. 82].)

Defendant relies on *In re Christopher J.* (1980) 102 Cal.App.3d 76 [162 Cal.Rptr. 147]. That reliance is misplaced. There, the Fourth District held that entry into a carport with intent to commit theft constituted a burglary because the carport was "an integral part of the dwelling house." (*Id.* at pp. 78-79.) The carport was roofed and attached to the dwelling house on one side; also, it was enclosed in the rear with a half-wall and open on two sides.

The dissent in *In re Christopher J.* argued that under the majority's analysis, even a porch with an overhanging roof would come within the burglary statute. (102 Cal.App.3d at pp. 81-82.) Defendant uses this statement to argue that entry onto the instant porch constitutes entry into a residence. Defendant, however, misses the point of the dissent—namely to criticize the majority's use of the "integral part of the dwelling" test. In so doing, the dissent uses an illustration of some potted plants sitting on a porch with an overhanging roof. Some other potted plants sit on the uncovered

---

[5]CALJIC No. 5.42, which was given here along with the full complement of relevant self-defense instructions, provides: "A person may defend [his] [her] home or habitation against anyone who manifestly intends or endeavors in a violent or riotous manner, to enter that home or habitation and who appears to intend violence to any person in that home. The amount of force which the person may use in resisting such trespass is limited by what would appear to a reasonable person, in the same or similar circumstances, necessary to resist the violent or unlawful entry. [He] [She] is not bound to retreat even though a retreat might safely be made. [He] [She] may resist force with force, increasing it in proportion to the intruder's persistence and violence if the circumstances which are apparent to the [homeowner] [lawful occupant] [of the property] are such as would excite similar fears and a similar belief in a reasonable person."

steps to the porch. Under the majority's analysis, argued the dissent, the thief who steals the potted plants off the steps is a petty thief. But when the miscreant "breaks the plane by sticking his arm under the overhang to get a plant on the porch he commits a felony." (*Id.* at p. 81.) The dissent argued that although the owner may miss his plants, the thief is still only a petty thief whether he steals them off the steps or off the covered porch.

We need not take sides in the *In re Christopher J.* controversy because we have concluded that the safety-based reasonable expectation test this court formulated in *Nible* is the appropriate test to apply here. We hold that a residential occupant does not have a reasonable expectation of protection from unauthorized intrusion onto the kind of front porch involved in this case, and therefore entry onto such a porch does not constitute entry into a residence for section 198.5 purposes. The trial court correctly denied defendant's request for a jury instruction based on section 198.5, which would have given defendant a rebuttable presumption that he was in reasonable fear of imminent danger when he used deadly force against Jason Neal.

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

We remand for resentencing in accord with the views expressed in this opinion. In all other respects, the judgment is affirmed.

Sims, J., concurred.

**BLEASE, Acting P. J.,** Concurring and Dissenting.—I concur in the judgment and opinion except for part 1, as to which I write separately.

The real issue is whether an open front porch may be "forcibly entered" within the meaning of Penal Code section 198.5. It arises out of an altercation in which the defendant shot his bricklayer in a dispute about a brick flower bed. According to defendant's testimony, at the time of the shooting he was standing just inside the screen door of his house with a handgun. "Neal [the bricklayer, who was carrying a hammer,] had stepped over the flower bed and had come up to the first level of the [open] porch, approximately five feet from defendant. Defendant fired the gun through the screen door, hitting Neal in the leg."

The defendant invokes the presumption of Penal Code section 198.5 as a defense to the charge that he shot Neal with the intention of inflicting great

---

*See footnote, *ante,* page 1489.

bodily injury. It provides in pertinent part that a person "using force intended or likely to cause death or great bodily injury within his or her residence shall be presumed to have held a reasonable fear of imminent peril of death or great bodily injury to self, . . . when that force is used against another person . . . who unlawfully and *forcibly enters . . . the residence* and the person using the force *knew* or had reason to believe that an unlawful and *forcible entry occurred.*" (Italics added.)

As emphasized the presumption may be invoked only when a residence has been forcibly entered. That limits what counts as a residence. The majority's preoccupation with the statutory law of burglary, and its consequent adoption of a reasonable expectations test, ignores the language of section 198.5. It does not say "unauthorized" entry; it requires an "unlawful *and* forcible entry." Both the subject of section 198.5 (the protection of habitation and occupancy) and the requirement that the force be used within a residence into which a "forcible entry occurred" signify that the ordinary law of burglary does not define the circumstances of entry and hence does not define the nature of the structure subject to entry. "Forcibly" is used to modify "enters" and not to signify an intended use of force against the occupant.

Section 198.5 has no application to a structure or part thereof that could not be entered by means of force. We are directed to give the words of a statute their ordinary and popular sense unless some technical usage is made apparent. The ordinary meaning of "forcible entry" is that given in Code of Civil Procedure section 1159: "Every person is guilty of a forcible entry who . . . [¶] 1. *By* breaking open doors, windows, or other parts of a house, or *by* any kind of violence or circumstance of terror enters upon or into any real property . . . ." Applying this definition, section 198.5 applies only to a part of the residence to which entry had been gained "[b]y breaking open doors, windows, or other parts" or "by any kind of violence or circumstance of terror . . . ." An open porch does not qualify because it could not be broken into or entered by violence.

Section 198.5 implies a test similar to the common law of burglary. "In order to constitute a breaking at common law, there had to be the creation of a breach or opening; a mere trespass at law was insufficient." (2 LaFave & Scott, Substantive Criminal Law, § 8.13, p. 464, fn. omitted.) It is dissimilar in that at the common law "the breaking need not involve force or violence, for once the house was closed the law protected it." (*Ibid.*) That, I think, is all the analysis that is needed to resolve this case. Section 198.5 has no

application. The bricklayer Neal did not enter any portion of defendant's residence that could be forcibly entered.

APPENDIX