[No. B218372. Second Dist., Div. Four. Dec. 8, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
KERWIN JACKSON, Defendant and Appellant.

COUNSEL

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Michael C. Keller and David Zarmi, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WILLHITE, Acting P. J.**—Kerwin Jackson appeals from the judgment entered following his conviction by jury on one count of first degree burglary. (Pen. Code, § 459.) Appellant contends that the jury instructions on the elements of burglary erroneously imposed a presumption that the balcony in this case qualified as a building for purposes of Penal Code section 459. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On March 25, 2009, around 12:30 a.m., Ericson Monsalud was sitting on his sofa in his apartment when he heard a loud sound like a plate breaking. Monsalud was the manager of the apartment building, so he got up to investigate. Monsalud saw appellant on his neighbor Henry Schipper's balcony, halfway inside Schipper's apartment and halfway on the balcony. It appeared to Monsalud that appellant was going into Schipper's apartment.

Monsalud looked at appellant and asked, "What are you doing?" Appellant looked at him in surprise but did not respond, so Monsalud went inside his apartment and got his phone to call the police. After Monsalud got his phone, he went back outside to see what appellant was doing. When Monsalud opened his door and stepped outside, appellant jumped over the brick wall and stood face to face with Monsalud, about 12 inches away. Monsalud recognized him as the man he had seen on Schipper's balcony. Monsalud told appellant, "You better split. Cops are coming." Appellant told him he was looking for someone named Belinda and left. Monsalud had never seen the man before, and he did not know anyone named Belinda. After appellant left, Monsalud called the police and told them what was happening.

While Monsalud was on the phone with the police, he went outside and watched appellant walk down the street and turn into another apartment complex, then exit and walk toward Venice Boulevard; Monsalud continued to describe appellant's movements to the police. Monsalud then saw a bus coming and told the police that appellant was going to get on the bus, although he did not actually see appellant board the bus. Monsalud later identified appellant to the police.

Henry Schipper testified that, on the night of the incident, he was awakened around 1:00 a.m. by a telephone call from Monsalud. Monsalud left a message saying that there was a burglar in Schipper's apartment. Schipper looked around his apartment and noticed that the sliding glass door to his veranda was open, even though he thought he had closed it when he went to bed. Schipper heard some noises downstairs. Schipper did not notice that anything was broken, and nothing was missing from his apartment.

Schipper described his veranda or balcony as follows: "I have a one-bedroom apartment, and the main room is a living room/dining room combined space. And one side of that, one wall of that, a big chunk of it opens out onto a veranda or a porch area. There's a sliding glass door, and there's a sliding screen door that opens the way onto that veranda." Schipper further stated that it was a private balcony, not shared with anyone else, and that there was no direct access to the balcony other than through his

apartment. Schipper had placed a wooden lattice piece against the edge of the balcony in order to create more privacy because there was an outdoor stairway on the other side of the balcony. Schipper testified that it was possible to climb over a fence or to climb over a concrete barrier from Monsalud's landing to get onto his balcony. Schipper had a few plants, a coffee table, and a larger table on the balcony.

Betty McClerkin testified that she was driving a bus on Venice Boulevard at the time of the incident and that she saw appellant running for the bus, so she stopped to pick him up. About two minutes after appellant boarded the bus, the police stopped the bus, so McClerkin "secured the bus and exited, walked toward the police. And they asked how many people were on the bus, and I told them two. And they approached the bus and boarded the bus." McClerkin told the police that appellant "sat down right at the front doors as soon as he boarded the bus, and he sat right at the very front seat."

Los Angeles Police Officer Brian Hadley testified that he was on patrol when he heard the radio call about a burglary suspect. Hadley saw someone who matched the description of the suspect running toward a bus and waving the bus down. Hadley and his partner stopped the bus, asked McClerkin how many people were on the bus, and asked the two people on the bus to step out of the bus. The police detained appellant but let the bus driver and the other passenger go because they did not match the description of the burglary suspect. Appellant gave the police his name and address and told them he was going home after visiting a friend. After Monsalud identified appellant as the suspect, appellant was taken to the police station. Los Angeles Police Officer Stephen Webber searched the seat of the bus where McClerkin said appellant had been sitting and found a flashlight behind the seat.

Appellant was charged by information with one count of first degree burglary.[1] (Pen. Code, § 459.) At trial, appellant did not testify or present any witnesses.

Following the close of evidence, the parties disputed a jury instruction submitted by the prosecution that, for purposes of defining residential burglary, a house includes a balcony. After hearing argument on the issue, the court decided to instruct the jury that appellant could be guilty of burglary if the prosecution proved that he entered a building or attached balcony with the intent to commit theft.

Defense counsel objected to the instructions, arguing that whether the balcony was part of the structure was a jury question. Defense counsel

---

[1] The information further alleged that appellant had two prior strikes (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), two prior serious felonies (Pen. Code, § 667, subd. (a)(1)), and three prior prison terms (Pen. Code, § 667.5, subd. (b)).

accordingly argued that the court should not include the word "balcony" in the instructions and "simply leave the word 'structure' and have the jury decide whether or not a balcony is part of a structure." The court reasoned, however, that a balcony was similar to an office or garage that was functionally interconnected with a residence.

The jury found appellant guilty of first degree burglary. (Pen. Code, § 459.) The court found true the allegations of prior strikes, but the prosecution moved to dismiss one of the strikes. The court granted the prosecution's motion to dismiss the earlier of the two strikes alleged and denied a defense motion to strike the second strike. The court sentenced appellant to the midterm of four years, doubled to eight years pursuant to the "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), plus five years each for appellant's two prior serious felony convictions (Pen. Code, § 667, subd. (a)), for a total of 18 years. The court awarded appellant credit for 128 actual custody days and 64 good time/worktime days, for a total of 192 days, and imposed various fines, fees, and conditions. Appellant filed a timely notice of appeal.

## DISCUSSION

Appellant contends that the jury instructions on the elements of burglary erroneously imposed the presumption that the balcony in this case constituted a building for purposes of Penal Code section 459, thus removing from the prosecution the burden of proving that appellant entered a building.

We review de novo whether jury instructions state the law correctly. (*People v. Riley* (2010) 185 Cal.App.4th 754, 767 [110 Cal.Rptr.3d 585].) " 'Review of the adequacy of instructions is based on whether the trial court "fully and fairly instructed on the applicable law." [Citation.]' [Citation.] ' " 'In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given.' [Citation.]" [Citation.]' [Citation.] ' "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation." [Citation.]' [Citation.]" (*Ibid.*) "Instructional error affects a defendant's substantial rights if the error was prejudicial under the applicable standard for determining harmless error. [Citations.]" (*People v. Franco* (2009) 180 Cal.App.4th 713, 720 [103 Cal.Rptr.3d 310].)

" 'Under the United States Constitution and California law, the government must prove each element of a charged offense beyond a reasonable doubt. [Citations.]' [Citation.] 'Whether an instruction correctly conveys

this standard must be determined by examining the instruction in the context of all the instructions given the jury. [Citations.]' [Citation.]" (*Riley, supra,* 185 Cal.App.4th at pp. 767–768.)

The jury instructions at issue provided that, in order to prove appellant guilty of burglary, the prosecution needed to prove that appellant entered a building or attached balcony and that when he entered the building or attached balcony he intended to commit theft. The instructions defined first degree burglary as burglary of an inhabited dwelling, which was defined to include "any balcony that is attached thereto and functionally connected with it as defined elsewhere in these instructions." The instructions further provided that "[a] structure or balcony is part of an inhabited dwelling if it is functionally interconnected with and immediately contiguous to other portions of the dwelling house. [¶] 'Functionally interconnected' means used in related or complementary ways. 'Contiguous' means adjacent, adjoining, and in actual close contact. It is not necessary that there be interconnecting doors."

■ Penal Code section 459 "provides in pertinent part that '[e]very person who enters any house, room, apartment, tenement . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. As used in this chapter, "inhabited" means currently being used for dwelling purposes, whether occupied or not.' [Citation.] Section 460 provides in pertinent part that '[e]very burglary of an inhabited dwelling house . . . is burglary of the first degree. [¶] All other kinds of burglary are of the second degree.' [Citation.] A conviction for first degree burglary thus requires 'entry' of an 'inhabited dwelling house' with the intent to commit a felony. [Citations.]

■ " '[T]he term "inhabited dwelling house" means a "structure where people ordinarily live and which is currently being used for dwelling purposes. [Citation.] A place is an inhabited dwelling if a person with possessory rights uses the place as sleeping quarters intending to continue doing so in the future." [Citations.]' [Citation.] Courts have broadly interpreted the term 'inhabited dwelling house' to include a variety of structures and places [citations] in order to effect the legislative purpose of the burglary statutes—'to protect the peaceful occupation of one's residence' against intrusion and violence. [Citation.]" (*People v. Thorn* (2009) 176 Cal.App.4th 255, 261 [97 Cal.Rptr.3d 605] (*Thorn*).)

The definition of burglary has been held to include, for example, a carport (*Thorn, supra,* 176 Cal.App.4th at pp. 263–266) and the area between a window screen and the window (*People v. Valencia* (2002) 28 Cal.4th 1 [120 Cal.Rptr.2d 131, 46 P.3d 920]). Although the parties, the trial court, and this court have been unable to find case law addressing a balcony similar to the

one at issue here, " '[i]n determining whether a structure is part of an inhabited dwelling, the essential inquiry is whether the structure is "functionally interconnected with and immediately contiguous to other portions of the house." [Citation.]' [Citation.] ' "Functionally interconnected" means used in related or complementary ways. "Contiguous" means adjacent, adjoining, nearby or close. [Citations.]' [Citation.]" (*Thorn, supra*, 176 Cal.App.4th at p. 262.)[2]

█ Schipper's balcony was immediately adjacent to his living room and extended the living room space. In addition, the balcony was separated from Schipper's bedroom by one thin wall. The balcony accordingly was " 'functionally interconnected to and immediately contiguous to' the [part of] the apartment[] used for 'residential activities.' [Citation.]" (*Thorn, supra*, 176 Cal.App.4th at p. 262.)

█ In addition to satisfying the functionally interconnected test, the balcony satisfies the reasonable person test discussed by the California Supreme Court in *Valencia*. Under this test, the question is "whether a reasonable person would believe that the element of the building in question enclosed an area into which a member of the general public could not pass without authorization." (*Valencia, supra*, 28 Cal.4th at p. 12.)

There is no question in this case that Schipper's balcony was accessible only through Schipper's apartment and was intended for the exclusive use of the inhabitants of Schipper's apartment. The balcony accordingly was an element of the building that enclosed an area into which a reasonable person would believe that "a member of the general public could not pass without authorization." (*Valencia, supra*, 28 Cal.4th at p. 12.) Schipper clearly held a "possessory interest" in the balcony. (*Id.* at p. 11.)

Appellant's reliance on *People v. Brown* (1992) 6 Cal.App.4th 1489 [8 Cal.Rptr.2d 513] is unavailing. In *Brown*, the court held that entry onto an "ordinary, unenclosed front porch" did not constitute entry into the defendant's residence for purposes of Penal Code section 198.5, which permits a residential occupant to protect himself or herself against an unlawful intrusion into the residence. (6 Cal.App.4th at p. 1497.) The porch at issue in *Brown* was "an unenclosed front porch, without any signs, gates or other indications that would tend to show the residential occupant did not expect intrusion into that area. The porch is connected to a walkway, which is connected to a driveway, which in turn is connected to a public sidewalk." (*Id.* at p. 1491.) By contrast, Schipper's balcony was not accessible to the public in

---

[2] Contrary to appellant's assertion, *Thorn* did apply the functionally interconnected test to determine whether the carport was part of the inhabited dwelling. (See *Thorn, supra*, 176 Cal.App.4th at p. 262.)

any way. Appellant's argument that Schipper's balcony was not part of his apartment because it was accessible by climbing over the concrete barrier from Monsalud's landing is untenable.

Contrary to appellant's assertion, whether the balcony was part of the structure was not a jury question. *Valencia* held that "[w]hether penetration into the area behind a window screen amounts to an entry of a building within the meaning of the burglary statute is a question of law and not a question of fact. A trial court's instructions must resolve such a legal issue for the jury, and may not invite the jury to resolve the question for itself." (*Valencia, supra*, 28 Cal.4th at p. 16.)

Finally, even had the trial court erred by including the term "balcony" in the definition of burglary, the undisputed evidence is that appellant was halfway inside Schipper's apartment and halfway on the balcony when Monsalud saw him. "[I]t has long been settled that '[a]ny kind of entry, complete or partial, . . . will' suffice. [Citation.]" (*Valencia, supra*, 28 Cal.4th at p. 13.) Because the evidence established that appellant entered Schipper's apartment, any instructional error would not have been prejudicial.

## DISPOSITION

The judgment is affirmed.

Manella, J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 2011, S189673.