**131 Nev., Advance Opinion 65**

## IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| CARRIE SUZANNE MERLINO, Appellant, vs. THE STATE OF NEVADA, Respondent. | No. 65273 <br><br> **FILED** <br><br> SEP 10 2015 <br><br> TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Appeal from a judgment of conviction for burglary entered following a jury trial. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

*Vacated in part.*

Philip J. Kohn, Public Defender, Howard S. Brooks, Chief Deputy Public Defender, and Jasmin D. Spells, Deputy Public Defender, Clark County, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Colleen R. Baharav, Deputy District Attorney, Clark County, for Respondent.

BEFORE GIBBONS, C.J., TAO and SILVER, JJ.

### OPINION

By the Court, TAO, J.:

Under Nevada law, a defendant commits the crime of burglary when he or she enters a building with the intent to commit a predicate crime inside the building. The question raised in this appeal is whether

15-901058

NRS 193.0145, NRS 205.060(1), and NRS 205.060(5), which define the acts that can constitute an entry into a building for purposes of the burglary statute, encompass selling stolen property through the retractable sliding tray of a pawn shop's drive-through window.

A jury convicted appellant Carrie Suzanne Merlino of burglary for doing exactly that. On appeal, we conclude that no reasonable person could conclude that the sliding tray fell within the outer boundary of the building that housed the pawn shop, and therefore the evidence introduced at trial was insufficient to demonstrate that Merlino committed an unlawful entry of the building as defined in the burglary statutes. Accordingly, we vacate the conviction on count five.

## FACTS

Merlino and her boyfriend, Dennis Byrd, befriended neighbor Teresa Wilson and would occasionally visit her in her apartment. During their visits, Merlino would sometimes bring Wilson food, clean her apartment, and run errands for her. Wilson eventually noticed that some jewelry was missing from her apartment and reported the theft, informing detectives with the Las Vegas Metropolitan Police Department that Merlino and Byrd might be responsible for the missing items. During their investigation, the detectives learned that Merlino had pawned items matching the descriptions of Wilson's missing jewelry. Wilson identified the pawned items as belonging to her and indicated that Merlino did not have permission to possess those items. Merlino was subsequently charged by way of indictment with conspiracy to commit a crime, grand larceny, and three counts of burglary. She was convicted on all counts but on appeal challenges only her conviction on count five, one of the three counts of burglary.

Count five of the indictment charged Merlino with entering an EZ-Pawn store on October 24, 2011, with the intent to obtain money under false pretenses by pawning items stolen from Wilson. The evidence introduced at trial in support of this count demonstrated that, on that date, Merlino pawned five items of jewelry through the drive-through window of the EZ-Pawn by placing them onto a metal tray that slid in and out of the building.

EZ-Pawn employee Leonard Yazzie described the drive-through window and its tray. Yazzie could not recall the particular transaction involving Merlino but testified that, in general, pawn transactions through the drive-through window required a customer outside the store to place items onto a sliding tray, which the cashier would extend out to the customer and then pull back into the interior of the store. The cashier would retrieve the items from the tray and place documents and money onto the tray before sliding it back outside the store to where the customer could access the tray. Only when extended could the customer access the tray; when retracted, the tray was enclosed entirely within the walls of the building and could not be accessed from outside.

After the close of evidence, the district court instructed the jury. Among the instructions given was Instruction No. 23, which stated that "[a]n entry is deemed complete when, however slight, any portion of the intruder's body penetrates the space within the building." Based upon this definition, the State argued that the sliding tray constituted part of the structure of the building and, therefore, Merlino entered the building by using the tray to pawn Wilson's property. Merlino maintained that no

 

part of her body entered the interior of the building and, consequently, no entry occurred.

## ANALYSIS

In this appeal, Merlino challenges only one of her three burglary convictions, namely, count five, which charged her with entering the EZ-Pawn store on October 24, 2011, with the intent to commit the crime of obtaining money under false pretenses. Merlino concedes that substantial evidence was introduced at trial to support her convictions on the remaining counts.

As to count five, however, Merlino contends that insufficient evidence exists to support her conviction. The test for sufficiency of the evidence in a criminal case is "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." *Id.* (citing *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 438-39 (1975)).

Merlino argues that the crime of burglary requires "entry" into the premises, and no such "entry" occurred when she merely placed items onto, and removed money from, the sliding tray of the drive-through window. The principal authority cited by Merlino is *Smith v. First Judicial District Court*, 75 Nev. 526, 347 P.2d 526 (1959), in which the Nevada Supreme Court held that removing items from the open bed of a pickup truck was not a burglarious "entry" of the truck itself. In response, the State argues that the sliding tray was part of the building, and therefore when Merlino's hand entered the tray, the hand necessarily

entered the building itself. For the reasons set forth below, we agree with Merlino.

*Nevada's burglary scheme*

In Nevada, the offense of burglary is defined by NRS 205.060, which states, in pertinent part, as follows:

> 1. Except as otherwise provided in subsection 5, a person who, by day or night, enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, vehicle, vehicle trailer, semitrailer or house trailer, airplane, glider, boat or railroad car, with the intent to commit grand or petit larceny, assault or battery on any person or any felony, or to obtain money or property by false pretenses, is guilty of burglary.

An essential element of the offense of burglary is that the offender "entered" a "building." NRS 193.0145 defines "enter" for purposes of the burglary statute as follows:

> "Enter," when constituting an element or part of a crime, includes the entrance of the offender, or the insertion of any part of the body of the offender, or of any instrument or weapon held in the offender's hand and used or intended to be used to threaten or intimidate a person, or to detach or remove property.

NRS 193.0125 defines a "building" as including "every house, shed, boat, watercraft, railway car, tent or booth, whether completed or not, suitable for affording shelter for any human being, or as a place where any property is or will be kept for use, sale or deposit."[1]

---

[1]This definition is broader than the common-law definition, which defined "building" as a "structure with four walls and a roof, esp. a permanent structure." *Black's Law Dictionary* 234 (10th ed. 2014).

 

The question before us is whether the evidence at trial, construed in the light most favorable to the State, was sufficient to demonstrate that Merlino entered the EZ-Pawn within the meaning of NRS 193.0125, NRS 193.0145, and NRS 205.060, by pawning items through the sliding tray of the drive-through window. In this case, there is no evidence that Merlino used a weapon or otherwise "threaten[ed] or intimidate[d]" any person during the commission of the charged crime. Therefore, for Merlino's conviction to stand, the evidence adduced at trial must demonstrate that some part of Merlino's body, or something held in her hand, entered the building in question within the meaning of Nevada's burglary statutes.

Determining whether such an entry occurred in this case reveals a gap in Nevada's statutory burglary scheme. NRS 193.0125 defines the term "building" with reference to the functionality of a structure; specifically, a structure is a "building" that can be burglarized if it is functionally suitable to afford shelter or to keep property for use, sale, or deposit. NRS 193.0145 defines "entry" with respect to the offender's body or any tools that he or she uses. But the burglary statutes do not define the terms "enter" or "building" with reference to the size, shape, dimensions, or physical appearance of a particular structure. Consequently, the statutes do not delineate where the outer boundary of a structure begins and ends for purposes of determining when a particular structure has, or has not, been entered within the meaning of NRS 193.0145. Yet this is precisely the question before us in this appeal. Thus, resolving this appeal requires us to look outside of the statutes for guidance.

When the Legislature has not stepped in to address a particular question, we may look to the common law for an answer. *See Vansickle v. Haines*, 7 Nev. 249, 285 (1872) (stating that the common law, "so far as it is not repugnant to or inconsistent with, the constitution or laws of the United States, or the laws of the territory of Nevada, shall be the rule of decision in all courts of this territory. . . . [The common law] should remain in force until repealed by the legislature" (internal quotations omitted)).

*Burglary at common law*

The crime of burglary was originally a creature of the common law, but "[o]f all common law crimes, burglary today perhaps least resembles the prototype from which it sprang." Minturn T. Wright III, Note, *Statutory Burglary—The Magic of Four Walls and a Roof*, 100 U. Pa. L. Rev. 411, 411 (1951). At common law, burglary was the breaking and entering of a dwelling in the nighttime, and the law was intended to protect the sanctity of residences when its inhabitants were likely to be asleep and vulnerable. *Id.* at 411-12. Thus defined, burglary was not an offense against real or personal property, but rather one against the habitation. *See People v. Davis*, 958 P.2d 1083, 1088 (Cal. 1998). Consequently, burglary was originally "a crime of the most precise definition, under which only certain restricted acts were criminal." Wright, *supra*, at 411. Most states, however, have replaced the common-law crime with broader statutory definitions under which burglary "has become one of the most generalized forms of crime," encompassing not only personal abodes but also myriad other structures and even vehicles and commercial businesses in which people are unlikely to reside. *Id.*

Nevada adopted and applied the common-law definition of the crime of burglary until 1911, when it enacted the original statutes that, over time, evolved into NRS 193.0125, NRS 193.0145, and NRS 205.060. The statutory definition of burglary originally created in 1911, and whose core has survived until today, is significantly broader than the common-law definition in important ways.[2] But, as noted, Nevada never legislatively defined the term "building" in a way that objectively explains where one begins and ends or, put another way, whether and when one has been "entered" or not under NRS 193.0145. In reviewing the common law for guidance, the problem we encounter is that many of the terms historically used to describe the crime of burglary were somewhat ill-defined. For example, an "entry" was traditionally deemed to occur "when any part of the defendant's person passes the line of the threshold." 3 *Wharton's Criminal Law* § 322 (15th ed. 1995); *see also* 12A C.J.S. *Burglary* § 28 ("For purposes of a burglary conviction, a person must penetrate whatever forms a structure's outer boundary . . . .").

---

[2]For example, under the current statute, breaking is no longer an essential element of the crime. *State v. Adams*, 94 Nev. 503, 505, 581 P.2d 868, 869 (1978); *see also* NRS 205.060(1). Rather, the crime only requires an entry with the proper intent to commit an enumerated crime. *Id.* Further, the entry no longer needs to be forcible, nor does the crime need to occur at night. *See Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1113 (2002); *see also* NRS 205.060(1). Also, consent to the entry is not a defense to burglary if the person "acquired the entry with felonious intent." *Barrett v. State*, 105 Nev. 361, 364, 775 P.2d 1276, 1277 (1989). Finally, like many other states, Nevada has expanded the types of structures that can be burglarized to include houses, boats, watercraft, railway cars, tents, or booths, and the like. NRS 193.0125; NRS 205.060(1).

Consequently, the traditional definition of an "entry" and the traditional definition of a "building" were defined primarily in relation to each other; a building was entered when its threshold or outer boundary was penetrated.

At common law, the most widely used legal test for defining the outer boundary of a building, and when a building has been "entered," was to inquire whether the "airspace" contained within it has been penetrated.[3] *See Davis*, 958 P.2d at 1094 (Baxter, J., dissenting); *Gant v. State*, 640 So. 2d 1180, 1182 (Fla. Dist. Ct. App. 1994), *receded from on other grounds by Norman v. State*, 676 So. 2d 7 (Fla. Dist. Ct. App. 1996). As some courts have noted, "[i]t is the nature of the enclosure that creates [prohibited space]." *State v. Holt*, 352 P.3d 702, 706 (N.M. Ct. App.) (citation omitted), *cert. granted*, ___ P.3d ___ (N.M. Ct. App. 2015). *See People v. Valencia*, 46 P.3d 920, 925 (Cal. 2002) ("The airspace of a building is not independent of the outer boundary of a building; rather, the airspace of a building simply is that which is surrounded by the building's outer boundary."), *overruled in part on other grounds by People v. Yarborough*, 281 P.3d 68 (Cal. 2012).

When analyzing conventional buildings that were most commonly constructed decades ago, courts developed an understanding over time regarding where the boundaries of most such buildings were located. In most states, a structure's outer boundary was generally

---

[3]The instruction given to the jury in this case (Instruction No. 23) appeared to have been modeled after the common-law test.

understood to include its roof, walls, doors, and windows.[4] The case at hand, however, involves a feature constructed onto a building that was not as common a few decades ago as it is today, and here we see the common-law test fall short. A century ago, most abodes and businesses were conventionally constructed of a primarily rectangular shape with four walls, a roof, and clearly defined doors and windows; defining the boundaries of such simple structures was a relatively straightforward endeavor and the "airspace" test could be easily applied in most instances. But in an era in which buildings are no longer exclusively rectangular and may have such features as retractable roofs, sliding partitions, moveable awnings, or rolling shutters, and in which the outer boundaries of a

---

[4]*See Holt*, 352 P.3d at 706 ("'[I]n general, the roof, walls, doors, and windows constitute parts of a building's outer boundary, the penetration of which is sufficient for entry.'" (quoting *Valencia*, 46 P.3d at 925)); *State v. Kindred*, 307 P.3d 1038, 1041 (Ariz. Ct. App. 2013) ("a person must penetrate whatever forms a structure's outer boundary—a door, window, or wall, for example—but need not go further to have entered the structure"). Other courts have held that such things as the door jamb, window screen, and screen door also fall within the building's outer boundary. *See People v. Garcia*, 16 Cal. Rptr. 3d 833, 840 (Ct. App. 2004) (jamming crowbar into door jamb penetrated outer boundary of building); *People v. Moore*, 37 Cal. Rptr. 2d 104, 106 (Ct. App. 1994) (penetrating area between screen door and door sufficient for entry into outer boundary); *Commonwealth v. Burke*, 467 N.E.2d 846, 848-49 (Mass. 1984) (breaking outer storm window constituted entry even if inner window intact); *Williams v. State*, 997 S.W.2d 415, 417 (Tex. Crim. App. 1999) (breaking a door frame was burglarious entry); *Ortega v. State*, 626 S.W.2d 746, 747 (Tex. Crim. App. 1981) (a failed attempt to open a wooden door after removing its screen door constituted entry into outer boundary); *but see Stamps v. Commonwealth*, 602 S.W.2d 172, 173 (Ky. 1980) (breaking exterior surface of cinder block wall not entry; interior of the blocks themselves was "not a protected space").

building are no longer necessarily either fixed in place or easily recognizable, any test focused upon a building's "airspace" becomes increasingly subjective and arbitrary. As in this case, many commercial businesses today conduct at least some of their business through deposit windows, drop boxes, sliding trays, chutes, portals, tubes, slides, ramps, canisters, and slots of various configurations which may move in various ways, and which may, or may not, have lids, doors, covers, walls, tops, raised edges, or other features. Inquiring whether these features fall within the "outer boundary" of a building and serve to define "airspace" verges on an exercise in empty rhetoric rather than a search for a rigorous and meaningful definition of an essential element of a felony crime.

Indeed, courts applying the "airspace" test frequently find themselves wrestling over such minutiae as the distinction between an inner window and an outer window, *Commonwealth v. Burke*, 467 N.E.2d 846, 849 (Mass. 1984); whether the interior of a home begins at the exterior surface or interior surface of a door, *State v. Kindred*, 307 P.3d 1038, 1040-41 (Ariz. Ct. App. 2013); where the last barrier to the interior of the house was located, *State v. Pigques*, 310 S.W.2d 942, 944 (Mo. 1958); and whether the distance between a roof and a ceiling falls within the "airspace" of a home, *Miller v. State*, 187 So. 2d 51, 52 (Fla. Dist. Ct. App. 1966).

Consequently, California (whose burglary statute substantially mirrors Nevada's)[5] expressly rejected the "airspace" test as a

---

[5]*See State v. White*, 130 Nev. ___, ___ n.1, 330 P.3d 482, 485 n.1 (2014) ("California's burglary statute is nearly identical to Nevada's . . . ."). Cal. Penal Code § 459 (West 2010) provides, in relevant part, that "[e]very person who enters any . . . tenement, shop, warehouse, store . . . or other

*continued on next page...*



comprehensive test for determining the boundary of a building or inquiring whether it has been entered. *See Valencia*, 46 P.3d at 925 ("[W]e have misgivings about the general usefulness of an airspace test to define the outer boundary of a building for purposes of burglary."); *People v. Nible*, 247 Cal. Rptr. 396, 399 (Ct. App. 1988) ("in our view, the 'air space' test, although useful in some situations, is inadequate as a comprehensive test for determining when a burglarious entry occurs"). Some other states have also limited the "airspace" test. *See Holt*, 352 P.3d at 707 (reviewing cases from several states).

Instead, recognizing that modern burglary statutes exist to protect a property owner's "possessory interest in a building" and the safety of its occupants, California has supplemented the "airspace" test with a "reasonable belief" test, articulated as follows: whenever the outer boundary of a building is not self-evident under the common-law "airspace" test, the outer boundary legally includes "any element that encloses an area into which a reasonable person would believe that a member of the general public could not pass without authorization." *Valencia*, 46 P.3d at 926. This test was designed to more closely mirror the normal expectations of privacy and safety that attach to property ownership and habitation. *Id.* at 924-25 (quoting *Nible*, 247 Cal. Rptr. at 399) ("The proper question is whether the nature of a structure's composition is such that a reasonable person would expect some protection from unauthorized intrusions . . . [and whether the feature was] a permanent part of the dwelling . . . on which the occupants rely for

---

*...continued*

building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."

protection and that to open such a door . . . is a violation of the security of the dwelling house which is the peculiar gravamen of a burglarious breaking." (internal quotations omitted)).

The Supreme Court of Nevada recently explored the purpose of Nevada's burglary statute in some detail and concluded that Nevada follows California burglary law in important respects. *State v. White*, 130 Nev. ___, ___, 330 P.3d 482, 485 (2014) ("We agree with the analysis of the California Supreme Court in [*People v. Gauze*, 542 P.2d 1365 (Cal. 1975)], which relied upon these policies to reach the conclusion that a person with an absolute right to enter a structure cannot commit burglary of that structure."). The court concluded that Nevada's burglary scheme was designed to protect the same interests as California's, namely, to protect the owner's possessory right in his property or premises and to prevent the danger associated with a felonious entry of the structure. *Id.*

Because the scope and purpose of Nevada's statutory scheme fundamentally mirrors that of California, it follows that we may consider California jurisprudence in defining the "outer boundary" of a building and analyzing when it has been "entered" under NRS 193.0145 and NRS 205.060. *See generally, City of Las Vegas v. Cliff Shadows Prof. Plaza, LLC*, 129 Nev. ___, ___ n.4, 293 P.3d 860, 865 n.4 (2013) ("This court has often relied on the decisions of other jurisdictions when, as here, it is faced with issues of first impression.").

We conclude that, when dealing with unorthodox contours or features such as the sliding tray in this case, the "reasonable belief" test represents a superior method for identifying the protected outer boundary of a structure than the common-law "airspace" test. Thus, whenever the outer boundary of a building is not self-evident from the shape and

contours of the structure itself, the outer boundary is legally defined to include "any element that encloses an area into which a reasonable person would believe that a member of the general public could not pass without authorization." *Valencia*, 46 P.3d at 926. On the other hand, if the outer boundary of the structure is self-evident because the shape and features of the structure are traditional, then the common-law "airspace" test may be satisfactory.[6]

Under this test, stepping onto an unenclosed front porch has been held not to constitute a burglarious entry because a reasonable person would not believe that he or she would need permission to merely step onto the porch. *Id.* (citing *People v. Brown*, 8 Cal. Rptr. 2d 513, 517 (Ct. App. 1992). On the other hand, opening and walking through a screen door to an enclosed porch, or a locked gate covered with iron mesh in front of an enclosed and roofed stairway, has been held to constitute a burglarious entry because a reasonable person would believe that he or she needed permission to do so. *Id.* (citing *People v. Wise*, 30 Cal. Rptr. 2d 413, 415-18 (Ct. App. 1994)); *Bowers v. State*, 297 S.E.2d 359 (Ga. Ct. App. 1982). Similarly, climbing over the railing of a second-floor balcony bounded by a railing has also been held to constitute a burglarious entry. *See Yarborough*, 281 P.3d at 698.

---

[6]Although we apply the "reasonable belief" test as a legal test to the facts of this case, in future cases, the district courts of this state should consider utilizing this test as a jury instruction whenever the jury is tasked with defining the "outer boundary" of a building or structure having unusual features and when such a building has been "entered."

*The evidence in this case*

At trial, the State argued that Merlino entered the EZ-Pawn store by placing items onto—and removing money from—the sliding tray connected to the building while the tray was open. The dispositive question, however, is not whether she entered the tray, but rather whether she crossed the outer boundary of the building. Accordingly, the inquiry is whether the tray falls inside, or outside, the outer boundary of the building. Applying the "reasonable belief" test, the question becomes whether the tray, when open, constitutes an element that encloses an area into which a reasonable person would believe that a member of the general public could not pass without authorization. We conclude that it does not.

Our conclusion arises from the natural operation of the tray, which is worth describing in detail. The tray in this case is retractable and can be manually opened and closed by the pawn shop cashier. When no customer is present, the tray is normally retracted into its closed position in which it rests entirely inside the perimeter of the wall of the pawn shop and its outer edge is flush with the wall. While closed, nothing can be placed into the tray from outside the building. When a customer wishes to do business through the drive-through window, the pawn shop cashier can manually push the tray outwards toward the customer so that it temporarily extends beyond the perimeter of the wall, giving the customer access to the tray for a few seconds during the transaction. After items have been placed inside the tray, the cashier may withdraw the tray into the perimeter of the wall into its closed position. A customer may place items into the tray while it is open, but the tray cannot be fully retracted into the store until the customer lets go of it.

When the tray is retracted entirely within the perimeter of the wall in its closed position, no reasonable person would believe that a member of the general public could force or pry the tray open without authorization in order to gain access to the interior of the building. While retracted into the building, the outer edge of the tray encloses an area that can reasonably be considered to fall within the permanent possessory rights of the building's owner. Thus, forcing open a tray that has been closed would clearly constitute a violation of the building's outer boundary.

However, the analysis is very different when the tray is extended outward in its open position. When open, the tray temporarily (for only as long as it takes to complete the transaction) extends some distance outside of the perimeter of the wall and occupies an area outside of the wall, a few feet above the ground. No reasonable person would believe that violation of the area temporarily enclosed within the tray while extended threatened the owner's permanent possessory rights in the building. *See People v. Davis*, 958 P.2d 1083, 1089 (Cal. 1998) (holding that passing a forged check through the window chute of a business's walk-up window did not constitute a burglarious entry, because doing so did not violate the owner's possessory interest in the building). A building owner may construct a tray or box that attaches to the building in some way and moves around, but that does not mean that the owner necessarily "owns" the space within the box whenever it goes outside of the building as an incident of owning the building itself.[7] In this case, the sliding tray fails the "reasonable belief" test, and an item placed within the sliding

---

[7]He may own the box, but it is not because he owns the building.

COURT OF APPEALS
OF
NEVADA

(O) 1947B

tray cannot in any realistic sense be considered to be inside the boundary of the building until, and unless, the cashier manually draws it inside by retracting the tray.

In this case, the retractable tray is far more akin to a tool or instrument that can be manipulated to move objects into and out of the outer boundary of the building than it is a part of the boundary itself. At common law, the use of an instrument to breach a building could constitute a burglarious entry. *See id.* at 1086 ("[A] burglary may be committed by using an instrument to enter a building—whether that instrument is used solely to effect entry, or to accomplish the intended larceny or felony as well."). But under NRS 193.0145, the instrument must be held in the offender's hand, or at least operated by the defendant, to constitute an "entry." NRS 193.0145 (entry can be through an "instrument or weapon held in the offender's hand and used . . . to detach or remove property").

Here, the tray was operated not by Merlino, but rather by the cashier, whose independent actions caused the tray to enter the building but who could have refused to do so. Thus, fairly described, Merlino placed stolen items into an instrument operated by someone else to cause something to enter the building after it left her hands. Her actions initiated a chain of events that ultimately caused the building to be entered, but the success of that chain of events depended upon the cooperation of the cashier. Merely setting in motion a chain of events involving other people that culminates in stolen property entering the building does not equate to a criminal entry of the building by Merlino herself. Were it otherwise, then Merlino could conceivably have been convicted of burglary for hiring a courier to carry stolen property into the

building, or even for mailing stolen items to the pawn shop through the U.S. mail. NRS 193.0145 was not intended to encompass these circumstances.[8] *See Davis*, 958 P.2d at 1087-88 (noting that mailing a forged check into a bank through the mail, sliding a ransom note under a door, or accessing a bank's computer via the Internet from a home computer, "cannot reasonably be argued" to constitute burglaries).

Moreover, placing objects into the tray while standing outside does not implicate the same kinds of security and safety concerns as would arise had Merlino physically entered the pawn shop and potentially initiated a confrontation. *See White*, 130 Nev. at ___, 330 P.3d at 485 (noting that "[b]urglary statutes 'are based primarily upon a recognition of the dangers to personal safety . . . that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion'" (quoting *People v. Gauze*, 542 P.2d 1365, 1368 (Cal. 1975)). Her conviction for burglary cannot stand and must therefore be vacated.[9]

---

[8]The State argues that similar acts have been considered burglarious in various federal cases. *See United States v. Goudy*, 792 F.2d 664 (7th Cir. 1986) (walk-up window of bank's drive-up facility); *United States v. Phillips*, 609 F.2d 1271 (8th Cir. 1979) (taking money from bank's drive-up window); *United States v. Lankford*, 573 F.2d 1051 (8th Cir. 1978) (bank's night depository chute). But those cases were decided pursuant to federal bank robbery statutes that are substantially dissimilar to Nevada burglary law.

[9]Our conclusion may be different had Merlino pried the tray open from its closed position in order to insert items into, or remove items from, the pawn shop. It might even be different had Merlino placed something into the tray while it was open and then forcefully pushed it into the building against the resistance of the cashier. In either of these cases, a reasonable person could believe that the tray was being used to breach the

*continued on next page...*

In closing, in response to various arguments raised by the State, we note in passing that our disposition of this appeal does not depend upon whether Merlino was considered to have entered the store with her entire body, or merely a small portion of it such as her hand; either would suffice to constitute a burglarious entry had the actual boundary of the store been penetrated. Even the slightest penetration into a building (had the building been penetrated) would suffice to support a burglary conviction.[10]

---

*...continued*

building in a way that violated the owner's property rights in the building. But no evidence was presented that Merlino did either of these things.

[10]NRS 193.0145; *see Sears v. State*, 713 P.2d 1218, 1220 (Alaska Ct. App. 1986) ("[An] intruder enters by entry of his whole body, part of his body, or by insertion of any instrument that is intended to be used in the commission of a crime."); *Valencia*, 46 P.3d at 928 ("Entry that is *just barely* inside the premises, even if the area penetrated is small, is sufficient."); *State v. Faria*, 60 P.3d 333, 339-40 (Haw. 2002) (even slight penetration by hand, foot, or instrument is sufficient to constitute burglary); *Hebron v. State*, 627 A.2d 1029, 1038 (Md. 1993) ("the term 'entering' . . . requires that some part of the body of the intruder or an instrument used by the intruder crosses the threshold, even momentarily, of the house"); *see also Edelen v. United States*, 560 A.2d 527, 530 (D.C. 1989); *State v. Nichols*, 572 N.W.2d 163, 164 (Iowa Ct. App. 1997); *State v. Ervin*, 573 P.2d 600, 601-02 (Kan. 1977); *State v. Sneed*, 247 S.E.2d 658, 659 (N.C. Ct. App. 1978); *Griffin v. State*, 815 S.W.2d 576, 578 (Tex. Crim. App. 1991).

## CONCLUSION

For the foregoing reasons, we vacate Merlino's conviction on count five.

_____, J.
Tao

We concur:

_____, C.J.
Gibbons

_____, J.
Silver

COURT OF APPEALS
OF
NEVADA

(O) 1947B