Filed 4/8/21  P. v. Powell CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM JAMES POWELL,<br><br>        Defendant and Appellant. | A158731<br><br>(San Francisco County<br>Super. Ct. Nos. 230625,<br>19000115, 18010469) |

A jury convicted William James Powell of first degree burglary and other crimes; the trial court sentenced Powell to 16 years in state prison, which included a one-year prior prison term enhancement.  Powell appeals, raising several claims of error.  We affirm the judgment of conviction.  We strike the prior prison enhancement and remand for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

The prosecution charged Powell with first degree burglary with a person present enhancement, and with possession of burglary tools and resisting arrest.  The information alleged Powell committed the burglary while released from custody on another case; that Powell had a prior serious felony conviction and a prior strike; and that Powell had served two prior prison terms.

1

A.

*Prosecution Evidence*

In January 2019, Derek O. was living in a first-floor unit in a San Francisco apartment building. A staircase in the center of the building led from the sidewalk to the first-floor apartments. The staircase was behind a locked gate (front gate).

A breezeway was on the left side of the apartment building, also behind a locked gate. The breezeway went underneath the entire length of the first floor of the building, from the sidewalk to the backyard. Residents could enter their apartments using the front gate, or by walking down the breezeway, into the backyard, and up a back staircase. Residents' mailboxes were located in the breezeway. Amazon packages were delivered in the breezeway, placed neatly on the ground beneath the mailboxes.

Just before 5:00 a.m., Derek called 911. Derek told the dispatcher a man—later identified as Powell—had broken through the front gate.[1] Powell was "ramming his shoulder against [the] front door" of Derek's apartment, "breaking into" the apartment "right now." Derek said he could hear Powell's tools "clinking." He also told the dispatcher Powell was "probably on drugs."

Police officers arrived while Derek was on the phone with the 911 dispatcher. They saw Powell inside the breezeway. Amazon packages were in "disarray" on the ground near the breezeway gate. The officers told Powell to open the gate, but Powell said " 'no' " and ran through the backyard,

---

[1] Derek did not testify at trial. The court admitted the 911 call under the spontaneous statement exception to the hearsay rule. (Evid. Code, § 1240.) Undesignated statutory references are to the Evidence Code. Another resident heard "loud rattling" of the front gate. It sounded like someone was "banging" or "scraping" the gate in "aggressive" manner. Initially, the resident assumed a drunk person was banging on the gate, but as the banging continued, he realized it was "deliberate."

2

behind the building, and into the street.  An officer chased Powell, eventually apprehending and arresting him.  Powell had a tire iron and screwdriver.

## B.

### *Defense Evidence*

Powell acknowledged having prior convictions for burglary, receiving stolen property, and resisting a police officer by force.  Powell often trespassed on private property.  On one occasion, he entered an occupied houseboat and was found with the homeowner's possessions; on another occasion, he entered an art school and was found with its property.

Before the incident, Powell had trespassed at the apartment building and had spent time in the backyard with a friend.  On the morning of the incident, Powell smoked methamphetamine and consumed other drugs.  Powell went to the building to look for his friend.  He did not intend to enter the apartments, and he did not touch any packages or take anything from the building.  Powell ran from the police in part because he thought the officers were "fake cops."  Powell claimed he "wasn't all the way there" during the incident.

## C.

### *Verdict and Sentence*

In 2019, the jury convicted Powell of the charges and found true the person present enhancement.  The court found the remaining enhancement allegations true.  It sentenced Powell to 16 years in state prison, comprised of the four-year midterm on the burglary conviction, doubled for the prior strike enhancement.  It imposed and stayed one year for the conviction for possessing burglary tools.  The court imposed one year for the resisting arrest conviction, to run concurrent to the principal term.  The court imposed five

years for the prior serious felony conviction; two years for the out-on-bail enhancement; and one year for the prison prior.

DISCUSSION

I.

*Admission of 911 Call*

Powell argues the court abused its discretion by admitting the 911 call under the spontaneous statement exception to the hearsay rule because Derek was not " 'under the stress of excitement' " during the call.

A.     Background

Before trial, the prosecutor moved to admit the 911 call pursuant to section 1240. The prosecutor argued the evidence was a spontaneous statement because the substance of Derek's statements, the tone of his voice, and the circumstances of the situation demonstrated he was "deeply worried for his own safety and shaken by what was occurring." Defense counsel objected. According to defense counsel, Derek was "calm" during the phone call, was speaking from a "place of safety" inside his apartment, and was likely unafraid of Powell, who appeared intoxicated.

The court listened to the 911 call and determined it satisfied the requirements of section 1240. First, the court concluded Derek was "narrating, describing and explaining" a burglary "in progress." Next, the court found the statement was made "spontaneously," without opportunity for reflection, while Derek "was under the stress of excitement." The court explained: "it is clear from the substance of what [Derek] is saying that he has concerns that he is not, from his vantage point, safe. He's making this call summoning the police for the purpose of getting assistance."

4

B.  No Abuse of Discretion in Admitting the 911 Call as a Spontaneous Statement

An out-of-court statement is admissible under the spontaneous statement exception to the hearsay rule if:  (1) there is an occurrence startling enough to produce nervous excitement and render the statement spontaneous and unreflecting; (2) the statement is made before there has been time to contrive and misrepresent, i.e., while the speaker is under the stress of excitement; and (3) the utterance relates to the circumstance of the occurrence.  (*People v. Merriman* (2014) 60 Cal.4th 1, 64 (*Merriman*); Simons, Cal. Evidence Manual (2021 ed.) Hearsay Evidence, § 2:46, p. 143.)  "A statement meeting these requirements is 'considered trustworthy, and admissible at trial despite its hearsay character, because "in the stress of nervous excitement, the reflective faculties may be stilled and the utterance may become the instinctive and uninhibited expression of the speaker's actual impressions and belief." ' "  (*Merriman,* at p. 64.)

Several factors are relevant when determining whether a statement "was made while the declarant was still under the stress and excitement of the startling event and before there was 'time to contrive and misrepresent.' [Citation.]  Such factors include the passage of time between the startling event and the statement, whether the declarant blurted out the statement or made it in response to questioning, the declarant's emotional state and physical condition at the time of making the statement, and whether the content of the statement suggested an opportunity for reflection and fabrication.  [Citations.] . . .  [T]hese factors 'may be important, but solely as an indicator of the mental state of the declarant.' [Citation.]  For this reason, no one factor or combination of factors is dispositive." (*Merriman, supra,* 60 Cal.4th at p. 64.)

"Whether an out-of-court statement meets the statutory requirements for admission as a spontaneous statement is generally a question of fact for the trial court, the determination of which involves an exercise of the court's discretion." (*Merriman, supra,* 60 Cal.4th at p. 65.) We "uphold the trial court's determination of facts . . . supported by substantial evidence and review for abuse of discretion its decision to admit evidence under the spontaneous statement exception." (*Ibid.*)

Here, substantial evidence supports the court's conclusion that Derek was under the stress of the burglary during the 911 call. Derek told the dispatcher Powell had broken through the front gate and was "trying for the front door." As Derek spoke to the 911 dispatcher, Powell was "ramming his shoulder" into the front door of Derek's apartment. Derek could see Powell: he told the dispatcher the break in was happening "right now." On this record, the court could reasonably conclude Derek was " 'under the stress of excitement[,] . . . while [his] reflective powers were still in abeyance,' " during the call. (Simons, Cal. Evidence Manual, *supra*, § 2:46, p. 144.)

In urging us to reach a different conclusion, Powell argues Derek was "calm" during the 911 call and that he "fabricated" certain details about the burglary. This argument is not persuasive for two reasons. First, it misapprehends the standard of review. "Faced with two competing interpretations of the record, the standard of review decides the issue. On appeal, we cannot second-guess the trial court's assessment of the evidence in determining [Derek's] state of mind." (*People v. Liggins* (2020) 53 Cal.App.5th 55, 63–64.) Because substantial evidence supports the court's finding that Derek was under the stress of excitement caused by the burglary, "we see no error." (*Id.* at p. 64 [upholding admission of evidence

6

under spontaneous statement exception even where "some of the circumstances [were] . . . consistent with [declarant's] having calmed down"].)

Second, it is well settled that a "statement made calmly and coherently also may have been made spontaneously." (*Merriman, supra,* 60 Cal.4th at p. 65.) "To conclude otherwise would render the exception virtually nugatory: practically the only 'statements' able to qualify would be sounds devoid of meaning." (*People v. Poggi* (1988) 45 Cal.3d 306, 319.) That Derek made the statement in response to the dispatcher's questions does not render the statements "nonspontaneous." (*Id.* at pp. 319–320; *In re Daniel Z.* (1992) 10 Cal.App.4th 1009, 1022 [statement made in response to simple, nonsuggestive questioning may be "spontaneous" under section 1240].) Finally, Powell's disagreement with the accuracy of Derek's description of the burglary went to the weight of Derek's statement, not its admissibility. (Simons, Cal. Evidence Manual, *supra*, § 2:46, p. 143, citing *People v. Blacksher* (2011) 52 Cal.4th 769, 811.)

We conclude the court did not abuse its discretion by admitting the 911 call as a spontaneous statement under section 1240. Having reached this result, we need not address the parties' arguments regarding prejudice.

## II.

*Admission of Burglary Convictions for Impeachment*

Powell claims the court erred by admitting three prior burglary convictions for impeachment.

A. Background

The prosecution sought to impeach Powell with eight prior convictions, including second degree burglary convictions in 2011 and 2018, and a first degree burglary conviction in 2014. Defense counsel objected. Counsel

7

argued the admission of any prior convictions would be "highly prejudicial" under section 352.

The court permitted the prosecution to impeach Powell with five prior convictions, including the three burglary convictions. The court stated it had reviewed the factors in *People v. Beagle* (1972) 6 Cal.3d 441[2] and had balanced the need to provide "the jury with a fair picture of credibility issues in . . . a case that involves specific intent with the unfair prejudice that allowing [eight prior] convictions would allow."

After the court made its ruling, defense counsel objected to the first degree burglary conviction as "highly prejudicial" under section 352 based on its similarity to the charged offense. The court declined to change its ruling. It noted the prosecutor would not refer to the facts underlying the convictions and explained that the similarity between the prior conviction and the charged crime did not render the conviction unduly prejudicial within the meaning of section 352.

Powell testified and admitted the prior convictions. During closing argument, the prosecutor argued Powell's prior convictions were relevant only to evaluate his credibility and the court issued a limiting instruction regarding the prior convictions.

B.     No Abuse of Discretion in Admitting the Prior Convictions for Impeachment

Prior felony convictions involving moral turpitude are admissible to impeach the credibility of a witness, subject to the trial court's discretion under section 352 to exclude such evidence. (*People v. Green* (1995) 34 Cal.App.4th 165, 182; § 788.) When determining whether to admit a prior conviction, the court should consider the factors outlined in *People v. Beagle,*

---

[2] Overruled on other grounds in *People v. Diaz* (2015) 60 Cal.4th 1176.

*supra,* 6 Cal.3d 441: (1) whether the prior conviction reflects on the witness's honesty or veracity; (2) whether the prior conviction is near or remote in time; (3) the similarity between the prior conviction and the charged offense; and (4) what effect admitting the prior conviction would have on the defendant's decision to testify. (*People v. Edwards* (2013) 57 Cal.4th 658, 722 (*Edwards*).) "These factors need not be rigidly followed" (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925) and no single factor is dispositive. (*People v. Clark* (2011) 52 Cal.4th 856, 932 (*Clark*).) Because the trial court has broad discretion to admit or exclude impeachment evidence, "a reviewing court ordinarily will uphold the . . . exercise of discretion." (*Id.* at p. 932.)

There was no abuse of discretion, because three of the four factors weighed in favor of admission. First, burglary is a moral turpitude crime, and Powell's prior burglary convictions were relevant to his honesty and credibility. (*Edwards*, *supra,* 57 Cal.4th at p. 722; *Clark, supra,* 52 Cal.4th at p. 932 [a "series of crimes may be more probative of credibility than a single crime"].) Second, the prior convictions were not remote in time to Powell's 2019 trial. (*Edwards,* at p. 722.) Third, admitting the prior convictions did not deter Powell from testifying. (*People v. Mendoza, supra,* 78 Cal.App.4th at p. 926 [factor had no application where defendant "actually took the stand"].)

Powell contends the court erred because the prior burglary convictions were identical to the charged offense. "His argument does not succeed. Although the similarity between the prior convictions and the charged offenses is a factor for the court to consider when balancing probative value against prejudice, it is not dispositive." (*Clark, supra,* 52 Cal.4th at p. 932.) Numerous courts have upheld a trial court's admission of identical prior convictions for impeachment. (*Edwards, supra,* 57 Cal.4th at p. 724

9

[admitting " 'identical' " prior conviction was not an abuse of discretion]; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 639, 646 [no abuse of discretion in admitting prior felony convictions, "three of which were identical" to charged offense]; *People v. Castro* (1986) 186 Cal.App.3d 1211, 1216–1217 [upholding admission of five prior burglaries for impeachment in burglary prosecution].) Here, the court determined the prior burglary convictions were highly probative of Powell's credibility, and it weighed the potential prejudicial impact of admitting the convictions. The court limited the description of the convictions to reduce any potential prejudice and provided a limiting instruction that such convictions should be considered only to evaluate Powell's credibility. The court's determination that the potential for prejudice did not outweigh the probative value was not an abuse of discretion. (*Clark,* at p. 932 [no abuse of discretion in admitting prior conviction identical to charged crime].)

Powell contends the court's comments suggest it may have determined the similarity of the prior convictions weighed *in favor* of admissibility, rather than against it. (See *People v. Beagle, supra,* 6 Cal.3d at p. 454.) We disagree. The court's comments indicate it considered the similarity of prior convictions in assessing their probative value. The court recognized the potential for prejudice and balanced the probative value against "the danger of unfair prejudice." Assuming for the sake of argument the court misapplied this factor, reversal is not required. It is not reasonably probable "a result more favorable to defendant would have occurred in the absence of error" because the prosecution's evidence was strong and the defense's fairly weak. (*People v. Castro* (1985) 38 Cal.3d 301, 319.) Additionally, the court instructed the jury that the convictions were relevant only for credibility purposes.

Powell's other arguments fare no better.  The trial court was not—as Powell suggests—*required* to admit dissimilar convictions for impeachment, particularly when there was no request for the court to do so.  Additionally, Powell has forfeited his contention that the court should have "sanitized" the prior convictions by referring to them as "felon[ies] involving theft" because he did not raise this argument in the lower court.  (*People v. Green, supra,* 34 Cal.App.4th at p. 182, fn. 9.)

III.

*The Burglary Instruction*

Powell contends the court erroneously instructed the jury on the definition of "inhabited dwelling" for purposes of first degree burglary.

A.    Background

The court instructed the jury that to find Powell guilty of burglary, the prosecution must prove he "entered a building.  And . . . when he entered a building, he intended to commit theft by larceny."  (CALCRIM No. 1700.)  The court defined first degree burglary as "burglary of an inhabited part of a building.  A part of a building is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of alleged entry.  All other burglaries are second-degree."  (CALCRIM No. 1701.)

In addition to these instructions, the prosecution requested a pinpoint instruction that "space is part of an inhabited dwelling if it is functionally interconnected with, and immediately contiguous to, a building's living quarters.  [¶]  *Functionally interconnected* means used in related or complimentary ways.  [¶]  *Contiguous* means adjacent, adjoining, nearby, or close."  Over defense counsel's objection, the court gave the instruction.  It concluded the instruction was an "accurate statement of the law" under *People v. Thorn* (2009) 176 Cal.App.4th 255.

11

During closing argument, the prosecutor told the jury the word "space" in the jury instruction referred to the breezeway underneath the apartment building. The prosecutor explained: "[n]o one lives in the breezeway . . . . [B]ut it's still part of the residential building because it is functionally interconnected with, and immediately contiguous to, the building's living quarters. [¶] Functionally interconnected . . . . So you . . . go out and get your mail, or walk your bike into the backyard, related or complimentary [to] what you use for . . . living. And contiguous meaning, adjacent, adjoining, nearby or close. [¶] And we know that the breezeway is extremely adjacent to both [witnesses'] apartments, and sits underneath all the other apartments that are above. So this is the burglary of a residence, an inhabited dwelling."

Defense counsel acknowledged Powell entered an inhabited building. Counsel told the jury: "in an urban city like this, the houses are connected from the sides. That functionally interconnected prong that allows for this type of backdrop to count as a residence . . . is met." Later, defense counsel "concede[d] that this was an inhabited dwelling." Counsel, however, argued Powell did not have the intent to steal.

B.     No Error in Giving the Pinpoint Instruction

Powell argues the instruction allowed the jury to conclude his entry into a "mere space," rather than a "structure," was burglary. According to Powell, the instruction "directed the jury's verdict on this element, because all dwellings are surrounded by 'spaces' that are contiguous to and functionally interconnected with a building's living quarters, but are not part of the dwellings." Powell claims the instruction lowered the prosecution's burden of proof and violated his due process rights.

We address the issue on the merits, applying a de novo standard of review. (*People v. Jandres* (2014) 226 Cal.App.4th 340, 358.) "In reviewing the purportedly erroneous instructions, 'we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.' " (*People v. Frye* (1998) 18 Cal.4th 894, 957, disapproved on another point in *People v. Doolin* (2009) 45 Cal.4th 390, 420.) In conducting this inquiry, we view the instruction in the context of the record as a whole. (*Frye,* at p. 958.) We presume jurors are " ' "intelligent, capable of understanding instructions and applying them to the facts of the case." ' " (*People v. Carey* (2007) 41 Cal.4th 109, 130.)

First degree burglary is the burglary of "an inhabited dwelling house." (Pen. Code, § 460.) Courts have defined the term "inhabited dwelling house" broadly "to include areas not normally considered part of the 'living space' of a home." (*People v. Woods* (1998) 65 Cal.App.4th 345, 347–348.) An attached structure is part of an inhabited dwelling house if it "is an integral part of a dwelling, that is, functionally interconnected with and immediately contiguous to other portions of the house." (*People v. Ingram* (1995) 40 Cal.App.4th 1397, 1404, disapproved on another ground by *People v. Dotson* (1997) 16 Cal.4th 547, 559.)

In this context, courts have held that various areas—including carports, gated stairwells, balconies, and enclosed patios—are part of an inhabited dwelling house. (*People v. Thorn, supra,* 176 Cal.App.4th at p. 262 [carports directly underneath first-floor apartments were " 'functionally interconnected with and immediately contiguous to' " the apartments]; *People v. Wise* (1994) 25 Cal.App.4th 339, 346 [gated stairwell, which was "attached to the apartment building and covered by the building's roof," was an "integral part of the building"]; *People v. Jackson* (2010) 190 Cal.App.4th 918,

13

926 [apartment balcony satisfied functionally interconnected test]; *People v. Cook* (1982) 135 Cal.App.3d 785, 795–796 [attached garage and enclosed patio were an "integral part" of the residence].)

Courts have also upheld jury instructions defining inhabited dwelling house to include a particular area. (*People v. Fox* (1997) 58 Cal.App.4th 1041, 1045 [no error in instructing the jury that "attached garage is part of an inhabited dwelling house"]; *People v. Jackson, supra,* 190 Cal.App.4th at p. 926 [no error in instructing the jury that balcony was part of the structure].) Here, the instruction was not erroneous. It is undisputed the breezeway was functionally interconnected with, and immediately contiguous to, the building's living spaces. The breezeway was physically attached to the apartment building: it shared a common wall and roof with the building and was located directly beneath the first-floor apartments. Residents retrieved their mail from the breezeway; they could also access their apartments by walking through the breezeway and up a back staircase.

On this record, it is inconceivable that—as Powell suggests—the jury convicted him of burglary based on his entry into an outdoor space that was not part of the dwelling units. (*People v. Frye, supra,* 18 Cal.4th at p. 958; *People v. Jackson, supra,* 190 Cal.App.4th at p. 926 [assumed error in including term "balcony" in burglary instruction was harmless]; *People v. Jackson* (1933) 131 Cal.App. 605, 607 [burglary instruction did not prejudice the defendant where "undisputed evidence" established he entered a structure "affixed and attached to the floor" in the lobby of the building].)

IV.

*The Prior Prison Enhancement*

The court imposed a mandatory one-year enhancement pursuant to Penal Code section 667.5, subdivision (b) for Powell's prior prison term. (See

*People v. Lopez* (2019) 42 Cal.App.5th 337, 340–341.) The parties agree—as do we—that the enhancement must be stricken pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess.) because the prior prison term was not for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (*Lopez,* at pp. 340–341.)

We strike the Penal Code section 667.5, subdivision (b) enhancement and remand for resentencing. (*People v. Choi* (2021) 59 Cal.App.5th 753.) "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Here, the court did not impose the maximum sentence: it imposed the midterm on the burglary conviction, imposed and stayed the sentence on the conviction for possessing burglary tools, and ran the sentence for resisting arrest concurrent to the principal term. In the absence of the prior prison term enhancement, "the court may reevaluate its sentencing decisions in light of the changed circumstances. [Citation.] Remand for resentencing is appropriate." (*Choi,* at p. 770.)[3]

## DISPOSITION

The judgment of conviction is affirmed. The one-year prior prison term enhancement (Pen. Code, § 667.5, subd. (b)) is stricken and the matter is remanded for full resentencing.

---

[3] We reject Powell's cumulative error argument because we have identified no error. "In the absence of error, there is nothing to cumulate." (*People v. Duff* (2014) 58 Cal.4th 527, 562.) Because we are remanding for resentencing, we need not order the court to correct an internal inconsistency in the sentencing minute order regarding the resisting arrest conviction, nor the clerical errors in the abstract of judgment.

_____
Seligman, J.*

WE CONCUR:


_____
Simons, Acting P. J.


_____
Burns, J.


A158731


---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.