Filed 2/25/25  P. v. Santos CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANIEL SANTOS,<br><br>    Defendant and Appellant. | F087747<br><br>(Super. Ct. No. 20CM5910)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Robert S. Burns, Judge.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Daniel Santos got into an altercation with his cellmate, Adrian Rodriguez, and killed him. Defendant was found not guilty of murder, but he was convicted of voluntary manslaughter and aggravated assault by a prisoner. Defendant also admitted that he had two prior strike convictions and two prior serious felony convictions. At sentencing, the trial court imposed a sentence of 25 years to life, plus 10 years (five years for each prior serious felony conviction). The court also imposed various fines and fees.

On appeal, defendant argues that: (1) the trial court erred because, while it instructed the jury that self-defense is a defense to murder, it failed to include manslaughter in the homicide self-defense instruction; (2) the trial court erred because it failed to dismiss all enhancements except one as required by Penal Code section 1385,[1] subdivision (c)(2)(B); and (3) the trial court violated defendant's constitutional right to due process by imposing fines and fees without making a determination that defendant could pay them. The People disagree. We affirm.

## PROCEDURAL HISTORY

On February 2, 2024, the District Attorney of Kings County filed a first amended information charging defendant with first degree murder (§§ 187, subd. (a), 189; count 1) and aggravated assault by a prisoner (§ 4501, subd. (b); count 2). As to count 2, the first amended information alleged that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)). Additionally, as to both counts, the first amended information alleged that defendant had two prior strike convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)) and had suffered two prior serious felony convictions (§ 667, subd. (a)(1)).

On February 2, 2024, defendant admitted that he had two prior strike convictions and two prior serious felony convictions.

---

[1] Undesignated statutory references are to the Penal Code.

2.

On February 7, 2024, a jury found defendant not guilty of murder, but guilty of the lesser included offense of voluntary manslaughter. The jury also found defendant guilty of aggravated assault by a prisoner and the great bodily injury enhancement true.

On March 8, 2024, defendant was sentenced. The trial court sentenced defendant to 25 years to life plus 10 years (five years for each prior serious felony enhancement) on count 1. On count 2, the court imposed a term of 25 years to life plus 13 years, but it stayed this term pursuant to section 654. Finally, the court imposed fines and fees, including two assessments totaling $70 and a $300 restitution fine.

On March 13, 2024, defendant timely filed a notice of appeal.

<u>**FACTUAL SUMMARY**</u>

**The Prosecution's Case**

On September 10, 2020, at approximately 8:15 p.m., Correctional Officer Eric Ontiveros was conducting safety guard checks at Corcoran State Prison. When Ontiveros got to cell 32, he saw Rodriguez on the ground, unconscious and with blood covering his face. Defendant was standing in front of the door.

Ontiveros activated his alarm and told defendant to "cuff up." Defendant did not comply. Correctional Officer Carlos Gonzalez responded to the alarm, and both officers saw defendant punching Rodriguez in the face. Gonzalez ordered defendant to "get down," but defendant did not comply with this order either. Gonzalez then pepper sprayed defendant, at which point he immediately submitted to handcuffs.

Rodriguez was still breathing, but he was unresponsive to verbal orders and he did not appear to be conscious. However, by 9:00 p.m., Rodriguez was dead. He suffered lacerations to his face, his head was badly damaged, and he "had what appeared to be a footprint on his face."

Doctor Evan Matshes, a forensic pathologist, testified that "Rodriguez was beaten to death, and he died of blunt head trauma." His scalp was "torn because of impact, and there was deep bleeding under it." He had "two different kinds of injuries to his face and

3.

scalp when it [came] to the skin splitting.  On the left hand side of his scalp and his nose area he ha[d] tearing from impact.  He also ha[d] slices on his forehead and other parts of his face, which [were] sharp wounds from a cutting object or sharp object."  Dr. Matshes did not see any defensive wounds.

Defendant had red marks or abrasions on his head and neck.  He also had swelling on the left side of his head.

Sergeant Alfredo Guerrero searched cell 32.  In or near the toilet he found razor blades and a plastic part of a disposable razor.  While disposable razors are issued to inmates during shower program, inmates are supposed to return them at the completion of shower program.

**Defendant's Case**

On September 10, 2020, R.G., an inmate at Corcoran State Prison, was in a cell near defendant's cell.  While he could not see into defendant's cell, he could hear shouting coming from that cell.  Defendant's cellmate asked defendant if defendant spilled water, and defendant stated that he did not.  R.G. heard "scuffs and like the shoes moving back and forth in the concrete."  At some point during the struggle defendant yelled, "kick the f**k back" and defendant's cellmate yelled, "f**k that s**it."  It sounded like defendant wanted his cellmate to stop.  Eventually, the scuffling stopped.  R.G. did not hear anyone fall or cry out.

A.A. was also in a cell near defendant's cell.[2]  He knew that defendant and Rodriguez were cellmates.  He was friends with defendant, and he knew Rodriguez (but not well).  A.A. heard Rodriguez being "kind of aggressive."  Rodriguez "was kind of cussing [at defendant] and saying some things that … a person in prison would take

---

[2]    The parties stipulated to the admission of portions of A.A.'s preliminary hearing testimony.

4.

offensive [to]." After the alarm went off, A.A. heard sounds that were consistent with a fight.

## DISCUSSION

**I.    While the Trial Court Erred When Instructing the Jury, the Error Was Harmless**

### A.    *Additional Background*

As relevant here, when the trial court instructed the jury, it read CALCRIM Nos. 500 and 505 (as modified):

> "Homicide is the killing of one human being by another. Murder is a type of homicide. The defendant is charged with murder.
>
> "A homicide can be lawful or unlawful. If a person kills with a legally valid excuse or justification, the killing is lawful, and he or she … has not committed a crime.
>
> "If there is no legally valid excuse or justification, the killing is unlawful. And depending upon the circumstances the person is guilty of either murder or manslaughter. You must decide whether the killing in this case was unlawful[, a]nd if so, what specific crime was committed.
>
> "I will now instruct you [i]n more detail on what is a legally permissible excuse or justification for a homicide. I will also instruct you on the different types of murder.
>
> "The defendant is not guilty of *murder* if he was justified in killing someone in self-defense. The defendant acted in lawful self-defense if:
>
> "One, the defendant reasonably believed that he was in imminent danger of being killed or suffering great bodily injury.
>
> "Two, the defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger.
>
> "And three, the defendant used no more force than was reasonably necessary to defend against that danger.…  [¶] … [¶]
>
> "The People have the burden of proving beyond a reasonable doubt that the killing was not justified. If the People have not met this burden, you must find the defendant not guilty of *murder*." (Italics added.)

The trial court also read CALCRIM No. 571:

"A killing that would otherwise be murder is reduced to voluntarily [*sic*] manslaughter if the defendant killed a person because he acted in imperfect self-defense. If you conclude that the defendant acted in complete self-defense, his action was lawful, and you must find him not guilty of any crime. The difference between complete self-defense and imperfect self-defense depends on whether the defendant's belief in the need to use deadly force was reasonable."

The trial court also read CALCRIM No. 3470 (as modified):

"Self-defense is a defense to murder, voluntarily [*sic*] manslaughter, involuntary manslaughter, and assault with force likely to produce great bodily injury while serving a state prison sentence. The defendant is not guilty of those crimes if he uses force against the other person in lawful self-defense.

"The defendant acted in lawful self-defense if the defendant reasonably believed he was in imminent danger of suffering bodily injury or is in imminent danger of being touched unlawfully.

"The defendant reasonably believed that the immediate use of force was necessary to defend against that danger.

"And the defendant used no more force than was reasonably necessary to defend against the danger. [¶] … [¶]

"The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of murder[,] voluntarily [*sic*] manslaughter, involuntary manslaughter, or assault with force likely to introduce [*sic*] great bodily injury by a person serving a state prison commitment."

The jury was also provided a copy of all instructions.

## B.    *Standard of Review*

"We review de novo whether jury instructions state the law correctly." (*People v. Jackson* (2010) 190 Cal.App.4th 918, 923.) "Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably

6.

susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

Depending upon the basis of the claimed instructional error, we review it for harmlessness under either *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) or *People v. Watson* (1956) 46 Cal.2d 818, 836. Under the more stringent *Chapman* standard, which applies to errors of constitutional dimension, reversal is required unless the reviewing court can conclude beyond a reasonable doubt that the error did not contribute to the verdict. (*Chapman, supra*, at p. 24.) Under the alternative *Watson* standard, which applies to errors of state law, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred. (*Watson, supra*, at p. 836.)

"'When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner.'" (*People v. Jennings* (2010) 50 Cal.4th 616, 677.) We also "consider the arguments of counsel …." (*People v. Huggins* (2006) 38 Cal.4th 175, 193.)

### C.    Analysis

Defendant argues that, by failing to include voluntary manslaughter when instructing the jury with CALCRIM No. 505, the trial court committed instructional error because self-defense is a complete defense to voluntary manslaughter. Defendant argues that the error was prejudicial "because the homicide instructions as a whole do not make clear to the jury that 'perfect' self-defense is a complete defense to voluntary manslaughter …." Additionally, "from the given instructions, the jury would have no way to know that self-defense is a complete defense to voluntary manslaughter on a heat of passion theory."

We agree that the trial court erred. The court instructed the jury with CALCRIM No. 505 and CALCRIM No. 3470. CALCRIM No. 505 is the general self-defense instruction for homicide offenses. (*Ibid.*; *People v. Lopez* (2011) 199 Cal.App.4th 1297, 1304, fn. 34.) CALCRIM No. 3470 is "the general self-defense instruction for nonhomicide offenses." (*People v. Waxlax* (2021) 72 Cal.App.5th 579, 591; CALCRIM No. 3470.) As defendant argued self-defense, and as he was charged with both a homicide offense (voluntary manslaughter) and a nonhomicide offense (aggravated assault by a prisoner), the court did not err by giving both instructions. (*People v. Martinez* (2010) 47 Cal.4th 911, 953 ["In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case."].) The court did err, however, by including voluntary manslaughter when giving the self-defense instruction for nonhomicide offenses and failing to include voluntary manslaughter when giving the self-defense instruction for homicide offenses.[3]

While the trial court erred, even assuming the more stringent *Chapman* standard applies, the error is harmless beyond a reasonable doubt. Defendant is correct that the self-defense instruction at issue was not included in CALCRIM No. 505, and that the trial court did not mention self-defense when giving the heat of passion voluntary manslaughter instruction. However, when giving CALCRIM No. 571, the jury was instructed that, "[i]f you conclude that the defendant acted in complete self-defense, his action was lawful, and you must find him not guilty of any crime." Additionally, when giving CALCRIM No. 3470, the court specifically instructed the jury that "[s]elf-defense is a defense to … voluntarily [*sic*] manslaughter …." Further, the jury was instructed to consider the instructions together. "'[W]e presume the jury understood and followed the

---

**3** The People argue that defendant forfeited his claim of instructional error because he did not object at trial and the instruction given was a correct statement of law. This argument fails because, as discussed above, the instructions at issue were not correct.

8.

court's instructions'" (*People v. Erskine* (2019) 7 Cal.5th 279, 303), and we see no reason to deviate from that presumption here.

Additionally, nothing in the arguments made at trial suggested to the jury that self-defense is not a defense to voluntary manslaughter based on heat of passion. In fact, defense counsel urged the jury to acquit him of all charges because he was acting in self-defense, and the prosecution never disputed that self-defense was a complete defense to all charges. Instead, the prosecution argued that defendant was not acting in self-defense.

Further, defendant's assertion that "the erroneous self-defense instruction (CALCRIM No. 505) … *expressly* provides that self-defense is a defense *only* to murder and not to any other offense at issue in the case" is without merit. CALCRIM No. 505, as given by the trial court, does not provide that self-defense applies only to murder and not to any other offense at issue. Instead, as discussed above, CALCRIM No. 505 included the instruction for self-defense as to murder and CALCRIM No. 3470 included the instruction for self-defense as to voluntary manslaughter.

Finally, "[t]he difference between CALCRIM No. 3470 and CALCRIM No. 505— that is, the difference between self-defense in the homicide context and self-defense that will justify an assault—lies in the type of the threat the defendant believed they faced. To justify a homicide …, the defendant must believe that 'danger' or 'great bodily harm' is imminent, whereas an assault committed in self-defense may be justified if the defendant feared that any 'bodily injury,' or even an 'unlawful touching,' was imminent." (*People v. Waxlax, supra*, 72 Cal.App.5th at pp. 591–592.) Thus, if anything, the error benefitted defendant.

Accordingly, we conclude beyond a reasonable doubt that the jury would have reached the same result absent the error.

9.

## II. The Trial Court Did Not Err By Declining to Dismiss All Enhancements Except One

### A. Applicable Law

On January 1, 2022, Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81) went into effect, amending section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)

Section 1385, subdivision (c)(1), provides: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2), provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

As relevant here, section 1385, subdivision (c)(2)(B), provides that, when "[m]ultiple enhancements are alleged in a single case …, all enhancements beyond a single enhancement shall be dismissed."

### B. Standard of Review

"The proper interpretation of a statute is a question of law we review de novo. [Citations.] "'"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning."'" [Citation.] '"[W]e look to 'the entire substance of the statute … in order to determine the scope and purpose of the provision …. [Citation.]'

[Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute ….'" [Citation.]"'"" (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) Where the language supports more than one reasonable construction, we may look to extrinsic aids, including the legislative history, for additional guidance. (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1106.)

### C. Analysis

Defendant's sole argument is that, because section 1385, subdivision (c)(2)(B) says "all enhancements beyond a single enhancement *shall* be dismissed" (italics added), the trial court had no discretion and was required to dismiss all enhancements except one.

As the court in *People v. Cota* (2023) 97 Cal.App.5th 318 noted, every published opinion to address this argument has rejected it. (*Id.* at p. 335.) Additionally, we agree with and adopt the analysis and holding in *Cota*. When section 1385 is read as a whole, "[t]he phrase 'shall be dismissed,' as used in section 1385, subdivision (c)(2)(B) is not mandatory and does not require dismissal of any enhancement when doing so would endanger public safety." (*Cota, supra*, at p. 337.) Additionally, "[a]lthough the plain language is dispositive, the legislative history behind Senate Bill No. 81 also supports a conclusion that section 1385, subdivision (c)(2)(B) does not mandate dismissal in all circumstances." (*Ibid.*)

Accordingly, defendant's argument fails.

**III. Defendant Forfeited His Argument That the Trial Court Violated His Constitutional Right to Due Process by Imposing Fines and Fees Without First Making a Determination That Defendant Could Pay Them**

Finally, citing to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*) and cases that adopted its due process analysis, defendant argues that the trial court violated his right to due process because it imposed fines and fees without making a determination that he had a present ability to pay them.

At sentencing, the trial court imposed a $300 restitution fine (§ 1202.4), a $40 court operations assessment fee (§ 1465.8), and a $30 criminal conviction assessment fee (Gov. Code, § 70373). However, as defendant admits, defense counsel did not object or request a hearing regarding defendant's ability to pay.

*Dueñas* was decided in January of 2019, more than five years before defendant was sentenced in March 2024. Failure to object before the trial court generally forfeits the issue on appeal and this principle applies equally to constitutional claims like those raised by defendant. (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["The forfeiture doctrine is a 'well-established procedural principle that, with certain exceptions, an appellate court will not consider claims of error that could have been—but were not— raised in the trial court.'"]; *People v. McCullough* (2013) 56 Cal.4th 589, 593 [a constitutional right may be forfeited by failure to assert the right before the tribunal with jurisdiction to determine it].) Furthermore, "[i]n general, a defendant who fails to object to the imposition of fines, fees, and assessments at sentencing forfeits the right to challenge those fines, fees, and assessments on appeal." (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624.) This is particularly true in cases like this where sentencing occurred after *Dueñas* was decided. (*Greeley, supra*, at p. 624.) Accordingly, defendant's claim is forfeited.

In resisting this conclusion, defendant makes several arguments. First, defendant argues that "this claim is cognizable based on the principle that a complete failure of the trial court to exercise the discretion vested in it by law is also subject to review on appeal absent an objection …." In support of this argument, defendant relies on *People v. Downey* (2000) 82 Cal.App.4th 899 and *In re Sean W.* (2005) 127 Cal.App.4th 1177. However, in both cases, there was evidence in the record that demonstrated the trial court was unaware of the discretion granted to it by law. (*Downey, supra*, at pp. 911–912; *Sean W., supra*, at p. 1182.) Unlike these cases, nothing in the record here suggests that the trial court was unaware of its discretion. As noted above, the sentencing in this case

12.

occurred over five years after *Dueñas* was decided. Additionally, the probation report, which the court stated it read, discussed defendant's ability to pay fines and fees. Accordingly, we cannot conclude that the trial court completely failed to exercise its discretion. (*People v. Thomas* (2011) 52 Cal.4th 336, 361 ["In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law.'"].)

Second, defendant argues that, by imposing fines and fees without an ability to pay determination, the trial court acted in excess of its jurisdiction and the sentence is therefore unauthorized. Relatedly, defendant argues that the error was a legal one, and thus may be addressed on appeal. These arguments fail. Defendant cites to no cases, nor are we aware of any, suggesting that imposing fines and fees totaling $370 pursuant to state statutes exceeds the jurisdiction of the court.

It is true that "obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not [forfeitable]." (*People v. Smith* (2001) 24 Cal.4th 849, 852.) However, we presume the court knows and applies the correct case law, and there is nothing in the record suggesting that the trial court committed a legal error, let alone an obvious one. *Dueñas* did not hold that a restitution fine can never be imposed, or that a trial court must hold a hearing on the issue even in the absence of a request by either party. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1162, 1164, 1172; *People v. Castellano* (2019) 33 Cal.App.5th 485, 490 ["Consistent with *Dueñas*, a defendant must in the first instance contest in the trial court his or her ability to pay the fines, fees and assessments to be imposed and at a hearing present evidence of his or her inability to pay the amounts contemplated by the trial court."].) Further, given that no findings were made on the record regarding defendant's ability to pay (because defendant did not request a hearing on the matter), even if the trial court erred, the matter would have to be remanded for the court to make factual findings. Thus, the asserted error is forfeitable.

Third, defendant argues that because his fundamental constitutional rights were violated, the violation "should not be subject to the traditional forfeiture rules." However, defendant does not cite to any cases, nor are we aware of any, suggesting that the right at issue is "fundamental." Moreover, "'the Due Process Clause specially protects' only 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition.'" (*Department of State v. Munoz* (2024) 602 U.S. 899, 910, quoting *Washington v. Glucksberg* (1997) 521 U.S. 702, 720–721; accord, *United States v. Rahimi* (2024) 602 U.S. 680, 729, fn. 6 (conc. opn. of Kavanaugh, J.).) Defendant does not argue that the right at issue is deeply rooted in this Nation's history and tradition.

Finally, defendant argues that his counsel provided ineffective assistance by failing to object. Defendant has the burden of proving ineffective assistance of counsel (IAC). (*People v. Pope* (1979) 23 Cal.3d 412, 425, overruled on other grounds in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.) To establish such a claim, a defendant must show (1) his counsel's performance fell below an objective standard of reasonableness and (2) prejudice, that is, but for counsel's unprofessional error a different result would have been reasonably probable. (*Strickland v. Washington* (1984) 466 U.S. 668, 687–688, 694; *People v. Ledesma* (1987) 43 Cal.3d 171, 216–218.) "It is … particularly difficult to establish [IAC] on direct appeal, where we are limited to evaluating the appellate record. If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)

There is some information in the record suggesting that defendant could not afford to pay the fines and fees. For example, defendant was appointed counsel in the underlying proceeding and this appeal. However, the record is silent as to why trial counsel did not ask the trial court to consider defendant's ability to pay. Additionally, the

14.

record is not developed regarding defendant's assets and sources of income, and it does not establish defendant's inability to pay. Given this record, there is at least one satisfactory explanation for trial counsel's omission. That is, trial counsel may have chosen not to raise the issue because he had reason to believe that defendant had the ability to pay. (See, e.g., *People v. Ramirez* (2023) 98 Cal.App.5th 175, 226, fn. omitted ["Here, the record does not affirmatively demonstrate [the] defendant's trial counsel had no rational tactical purpose for failing to object to the imposition of the challenged fines and fees. Defense counsel may have had access to information about [the] defendant's financial status, including the possibility of his earnings while in prison, that would make such an objection unsuccessful."].)[4]

## DISPOSITION

The judgment is affirmed.

MEEHAN, J.

WE CONCUR:

LEVY, Acting P. J.

FRANSON, J.

---

[4]     Defendant also cites to numerous cases that found this issue was not forfeited because, while trial counsel failed to object, *Dueñas* had not yet been decided. As the sentencing in this case occurred over five years after *Dueñas* was decided, these cases are not on point.

15.